OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Education Law § 905 (1) requires school authorities in the State of New York to examine students between 8 and 16 years of age for scoliosis at least once in each school year. The principal issue on this appeal is whether the statute authorizes a private right of action.
 

 During the 1992-1993 school year, the infant plaintiff was a seventh grade student at the Goff Middle School, operated by defendant East Greenbush Central School District. In October 1992, as part of a school program, a nurse screened her for scoliosis. The results were negative. She was examined during the following school year (1993-1994) by a school nurse who checked her height, weight and vision but allegedly did not screen her for scoliosis.
 
 [1]
 

 In March 1995, when the infant plaintiff was a ninth grader during the 1994-1995 school year at Columbia High School
 
 *37
 
 (also operated by the East Greenbush Central School District), a school nurse screened her for scoliosis and the examination proved positive. Her parents, who are also plaintiffs in this action, then had her examined by an orthopedic doctor who concluded that her scoliosis had progressed to the point that surgery was required instead of the braces that often can be utilized when the condition is diagnosed earlier. The infant plaintiff underwent surgery in July 1995.
 

 Plaintiffs have alleged two causes of action against the East Greenbush Central School District and its Board of Education (collectively “the District”). One is based on a claimed violation of Education Law § 905 (1), one on common-law negligence. Plaintiffs assert, in essence, that the District was negligent in failing to examine the infant plaintiff for scoliosis during the 1993-1994 school year, as a result of which her ailment was allowed to progress undetected, to her detriment. Supreme Court granted the District’s motion for summary judgment, holding that Education Law § 905 (1) does not create a private right of action, and that plaintiffs had otherwise failed to state a claim for common-law negligence. The Appellate Division affirmed. We granted leave to appeal to this Court and now affirm.
 

 The Relevant Statutes
 

 We first address plaintiffs’ claim that Education Law § 905 (1) may be enforced by a private right of action. Three provisions of the Education Law are relevant to our inquiry. Education Law § 905 (1) states that “[mjedical inspectors or principals and teachers in charge of schools in this state shall * * * examine all * * * pupils between eight and sixteen years of age for scoliosis, at least once in each school year.” Education Law § 905 (2) provides that “[n] othwithstanding any other provisions of any general, special or local law, the school authorities charged with the duty of making such tests or examinations of pupils for the presence of scoliosis pursuant to this section shall not suffer any liability to any person as a result of making such test or examination, which liability would not have existed by any provision of law, statutory or otherwise, in the absence of this section.” Finally, Education Law § 911 charges the Commissioner of Education with the duty of enforcing the provisions of sections 901 through 910 of the Education Law
 
 *38
 
 and authorizes the Commissioner to “adopt rules and regulations” for such purpose.
 

 The Test For the Availability of a Private Right of Action
 

 As plaintiffs point out, the District’s obligation to examine for scoliosis is plain enough. A statutory command, however, does not necessarily carry with it a right of private enforcement by means of tort litigation
 
 (see, e.g., Mark G. v Sabol,
 
 93 NY2d 710).
 

 The availability of a private right of action for the violation of a statutory duty — as opposed to one grounded in common-law negligence — is not a new concept
 
 (see, e.g., Amberg v Kinley,
 
 214 NY 531, 535-536). When a statute itself expressly authorizes a private right of action
 
 (e.g.,
 
 Social Services Law § 420 [2]; General Obligations Law § 11-100 [1]; § 11-101 [1]), there is no need for further analysis. When a statute is silent, as it is here, courts have had to determine whether a private right of action may be fairly implied. In
 
 Burns Jackson Miller Summit & Spitzer v Lindner
 
 (59 NY2d 314, 325) this Court articulated the standards that were synthesized into a three-part test in
 
 Sheehy v Big Flats Community Day
 
 (73 NY2d 629). In making the determination, we ask:
 

 “(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted;
 

 “(2) whether recognition of a private right of action would promote the legislative purpose; and
 

 “(3) whether creation of such a right would be consistent with the legislative scheme”
 
 (Sheehy v Big Flats Community Day, 73
 
 NY2d, at 633,
 
 supra).
 

 There is no doubt that the infant plaintiff is a member of the class for whose particular benefit Education Law § 905 (1) was enacted. The first prong is satisfied.
 

 The second prong is itself a two-part inquiry. We must first discern what the Legislature was seeking to accomplish when it enacted the statute, and then determine whether a private right of action would promote that objective
 
 (see, e.g., Burns Jackson Miller Summit & Spitzer v Lindner,
 
 59 NY2d, at 330,
 
 supra).
 

 Here, the purpose of the statute is obvious. Scoliosis is a curvature of the spine which, if left undetected in children, can be crippling
 
 (see,
 
 Weiler,
 
 Scoliosis Screening,
 
 44 J School Health [No. 10] 563 [1974]). Upon early detection, scoliosis can
 
 *39
 
 be treated successfully, often without the need for surgery. In 1978 the Legislature amended Education Law § 905 (1) to add scoliosis screening to the then existing obligations to test children’s vision and hearing (L 1978, ch 202).
 
 [2]
 

 It is apparent that the Legislature was seeking to benefit the population as a whole by creating broad-based screening examinations for scoliosis, recognizing that early detection could serve the entire public in both its health and its purse. A main proponent of the legislation stated that:
 

 “The Bill will help reduce the cost of medical care to the general public as well as to the State in the case of indigent consumers. It will reduce hospital utilization as those cases which are detected in their early stage can be medically managed without hospitalization” (Letter of Scoliosis Assn, Mar. 8, 1978, Bill Jacket, L 1978, ch 202).
 

 Early detection of the condition serves the dual legislative purpose of promoting public health and avoiding costly hospitalization.
 

 In arguing that a private right of action would promote these objectives, plaintiffs assert that the risk of liability for failure to screen will encourage compliance with Education Law § 905 (1), and thereby further the statute’s purpose of providing broad-based screenings that benefit the public. In response, the District argues that the risk of liability will prompt school districts to seek waivers of the requirement to screen and thus defeat the statute’s purpose.
 

 In order to obtain a waiver from the Commissioner of Education, Education Law § 905 (3) requires a school district first to hold a public hearing on the issue and then to certify that the “school district does not have the capability to comply” with the program. While it is conceivable that the parents and others at the public hearing may support a decision to forego scoliosis screening for their children, it is by no means likely that they will do so on the basis of the school district’s incapability, considering that there are free training resources available to school districts that carry out the program
 
 (see,
 
 Letter of Senator Levy, Mar. 13, 1978, Bill Jacket, L 1978, ch 202). Although the District’s “waiver” argument is not entirely
 
 *40
 
 implausible it is an insufficient basis on which to conclude that private enforcement would not promote the statute’s purpose. In all, we conclude that a private right of action would promote the legislative purpose and, therefore, the second prong is satisfied.
 

 We turn next to the third
 
 Sheehy
 
 prong — whether a private right of action is consistent with the legislative scheme. It is not always easy to distinguish this “consistency” prong from the second
 
 Sheehy
 
 prong, which centers on “promotion” of the legislative goal. The two prongs may overlap and to that extent may resist pigeon-holing. A private right of action may at times further a legislative goal and coalesce smoothly with the existing statutory scheme
 
 (see, e.g., Doe v Roe,
 
 190 AD2d 463, 471). Conversely, a statute’s goal may not necessarily be enhanced by adding a private enforcement mechanism. In assessing the “consistency” prong, public and private avenues of enforcement do not always harmonize with one another. A private enforcement mechanism may be consistent with one statutory scheme, but in another the prospect may disserve the goal of consistency — like having two drivers at the wheel. Both may ultimately, at least in theory, promote statutory compliance, but they are born of different motivations and may produce a different allocation of benefits owing to differences in approach
 
 (e.g., Mark G. v Sabol,
 
 93 NY2d 710,
 
 supra).
 

 Plaintiffs argue that a private right of action is not only consistent with Education Law § 905 (1) but also necessary for its operation. They assert that the statute offers no other practical means of enforcement and that a private right of action is imperative, in order to give it life. We disagree and conclude that a private right of action would not be consistent with the statutory scheme. To begin with, the statute carries its own potent official enforcement mechanism. The Legislature has expressly charged the Commissioner of Education with the duty to implement Education Law § 905 (1) and has equipped the Commissioner with authority to adopt rules and regulations for such purpose
 
 (see,
 
 Education Law § 905 [1]; § 911). Moreover, the Legislature has vested the Commissioner with power to withhold public funding from noncompliant school districts. Thus, the Legislature clearly contemplated administrative enforcement of this statute. The question then becomes whether, in addition to administrative enforcement, an implied private right of action would be consistent with the legislative scheme.
 

 It would not. The evolution of Education Law § 905 (2) is compelling evidence of the Legislature’s intent to immunize
 
 *41
 
 the school districts from any liability that might arise out of the scoliosis screening program. By the language of Education Law § 905 (2) the Legislature deemed that the school district “shall not suffer any liability to any person as a result of
 
 making
 
 such test or examination” (emphasis added). Plaintiffs contend that by implication, the District is denied immunity for
 
 failing
 
 to perform the examination. In effect, plaintiffs would interpret the statute as conferring immunity for misfeasance but not nonfeasance. On the other hand, the District contends that it would be incongruous for the Legislature to accord immunity for one circumstance but not the other.
 

 Plaintiffs’ reading of the statute might have some appeal if we did not have persuasive evidence as to the Legislature’s intent to immunize the school districts for both nonfeasance and misfeasance. The Legislature revealed its stance, in support of the District’s interpretation, when in 1994 it amended Education Law § 905 (2) in reaction to an Appellate Division ruling in
 
 Bello v Board of Educ.
 
 (139 AD2d 945). The
 
 Bello
 
 Court ruled that Education Law § 905 (2) did not impose liability for the school district’s failure to notify a child’s parents of the positive results of the screening
 
 (Bello v Board of Educ.,
 
 139 AD2d, at 945,
 
 supra).
 
 The Court further stated in dicta, citing
 
 Grindle v Port Jervis Cent. School Dist.
 
 (118 AD2d 830), that “the Legislature did not intend to impose liability either for the making of the tests, [or] for the failure to make the tests”
 
 (Bello v Board of Educ.,
 
 139 AD2d, at 945,
 
 supra).
 
 The Legislature specifically responded to
 
 Bello
 
 by amending Education Law § 905 (2) to require parental notification of positive test results within 90 days after the test (L 1994, ch 197). Revealingly, the Legislature evidently saw no need to amend Education Law § 905 in any other way, although obviously aware of the two Appellate Division decisions on that point. Its failure to otherwise amend the statute is strong evidence of the Legislature’s conclusion that the Appellate Divisions had correctly interpreted the statute’s immunity provision.
 

 There is also the matter of cost to the school districts, as evidenced by the Legislature’s expressed sensitivity in that regard. Orthopedists through the New York State Society of Orthopaedic Surgeons and other professionals from the Scoliosis Association, Inc. agreed to volunteer their time and expertise to train existing school personnel on the relatively simple examination procedure (Letter of Senator Levy, Mar. 13, 1978, Bill Jacket, L 1978, ch 202). In forecasting its cost, the Legislature anticipated that the program would have
 
 *42
 
 minimal financial impact on school districts (Budget Report on Bills, Bill Jacket, L 1978, ch 202). Allowing a private right of action against the government as opposed to a private entity has direct and obvious financial consequences to the public (see,
 
 Mark G. v Sabol,
 
 93 NY2d 710,
 
 supra).
 

 Given the Legislature’s concern over the possible costs to the school districts — as evidenced by the statutory immunity provision and the other legislative statements reflecting those concerns — we conclude that the Legislature did not intend that the districts bear the potential liability for a program that benefits a far wider population. If we are to imply such a right, we must have clear evidence of the Legislature’s willingness to expose the governmental entity to liability that it might not otherwise incur. The case before us reveals no such legislative intent.
 

 In sum, we conclude that a private right of action to enforce Education Law § 905 (1) is inconsistent with the statute’s legislative scheme and therefore cannot be fairly implied
 
 (Sheehy v Big Flats Community Day,
 
 73 NY2d 629,
 
 supra).
 

 Common-Law Negligence
 

 Plaintiffs contend that the lower courts erred in holding that they failed to state a claim for common-law negligence. Essentially, plaintiffs argue that the District assumed a duty to the infant plaintiff and her parents by creating a special relationship with them in connection with the Education Law § 905 (1) program and that it breached its duty by failing to perform the examination during the 1993-1994 school year. We agree with the courts below that plaintiffs have failed as a matter of law to state a claim for common-law negligence (see,
 
 Cuffy v City of New York,
 
 69 NY2d 255, 261).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . In her complaint the infant plaintiff alleges that she was not tested for scoliosis as an eighth grader during the 1993-1994 school year. Although discovery was not completed, the District concedes that the infant plaintiffs school medical record for that year contains no notation with respect to any
 
 *37
 
 scoliosis screening. For purposes of this decision, we accept the infant plaintiffs allegation as true.
 

 [2]
 

 . In 1982, the Legislature further amended Education Law § 905 (1) to require examinations for scoliosis beginning at age eight and to allow parents to opt their children out of such examinations for bona fide religious reasons (L 1982, ch 160).