**Audrey SPARKES, Plaintiff,**

v.

**MORRISON & FOERSTER LONG-TERM DISABILITY INSURANCE PLAN, Morrison & Foerster LLP, and the Northwestern Mutual Life Insurance Company, Defendants.**

No. 98–CV–1287.

United States District Court,
N.D. New York.

Jan. 25, 2001.

O'Connell and Aronowitz (Jeffrey J. Sherrin, of counsel), Albany, NY, for Plaintiff.

Bond, Schoeneck & King, LLP (Arthur J. Siegel, of counsel), Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On August 7, 1998, plaintiff Audrey Sparkes ("Sparkes" or "plaintiff") com-

menced the instant action, asserting two causes of action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), and a third cause of action for wrongful discrimination in violation of California Insurance Code § 10401. Defendants answered the complaint. A motion for partial summary judgment dismissing the third cause of action under the California Insurance Code as preempted by ERISA was granted. Thereafter, plaintiff filed an amended complaint adding a new third cause of action under New York Insurance Law § 4224. Defendants answered the amended complaint. These motions pursuant to Fed.R.Civ.P. 56 followed.

Plaintiff moves for partial summary judgment as to her first and second causes of action, which seek monetary and injunctive relief for the wrongful denial of benefits under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Defendants have moved for summary judgment dismissing all ERISA and state law causes of action. Oral argument was heard on September 8, 2000, in Utica, New York. Decision was reserved.

## II. *FACTS*

This action arises out of the termination of long-term disability benefits to Sparkes by the defendant Northwestern Mutual Life Insurance Company ("Northwestern"), pursuant to a clause in the defendant Morrison & Foerster Long–Term Disability Plan (the "Plan") which limited receipt of benefits for disability due to mental illness to two years. The following are the undisputed facts in this case.

Sparkes was employed by defendant Morrison & Foerster LLP ("Morrison & Foerster"), a large international law firm, as a word processor and administrative assistant. Sparkes worked in the firm's New York office. During the relevant time period, the firm maintained a group long-term disability insurance plan with Northwestern. The Plan provided long-term disability benefits for eligible employees of the firm, subject to the terms and conditions of the Plan. As an employee of the firm, plaintiff was a participant in the Plan.

Under the terms and conditions of the Plan, an insured employee was entitled to long-term disability benefits, following a 90–day elimination period, if the insured was disabled from her own occupation for a 24–month period. After the 24–month period expired, benefits would be paid only if the employee was disabled from *all* occupations. All benefits under the Plan were subject to a mental disorder limitation which provided that "[p]ayments of [long-term disability] benefits is limited to 24 months for each period of Disability caused or contributed to by a Mental Disorder .... Mental Disorder means: a mental, emotional or behavioral disorder." *See* Ex. "F" to Siegel Affidavit at 8.

On December 27, 1991, Sparkes became disabled and was unable to work. She was subsequently diagnosed by her own doctors with Chronic Fatigue Syndrome ("CFS"). Following a 90–day elimination period, she began to receive benefits pursuant to the terms of the Plan effective March 28, 1992. On May 18, 1994, Northwestern notified her that it was making an exception to continue her benefits while it investigated the potential applicability of the mental health limitation to her claim.

On or about November 8, 1994, Sparkes was given a psychological examination by Dr. Jacqueline Bashkoff in regard to her application for Social Security disability benefits. Dr. Bashkoff did not attribute plaintiff's CFS symptoms to depression, or to any other mental health or personality disorder. She subsequently began to receive Social Security benefits on or about July 1, 1996.

On February 26, 1996, Northwestern terminated Sparkes' benefits under the Plan on the grounds that it had determined that her disability was attributable to depression, not to CFS, and that she had already received benefits in excess of

those payable under the two year mental disorder limitation of the Plan. Sparkes disagreed with this conclusion, and challenged the termination of her benefits pursuant to the internal review procedures of the plan. Following the exhaustion of these internal remedies, Sparkes commenced the instant action.

## III. STANDARD OF REVIEW

### A. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

For the reasons set forth below, defendants' motion for summary judgment is granted as to plaintiff's state law claim, and plaintiff's and defendants' motions for summary judgment are both denied as to plaintiff's first and second causes of action under ERISA.

### A. Plaintiff's State Law Claim

Defendants move for summary judgment as to Sparkes' third cause of action, discrimination in violation of New York Insurance Law § 4224, on the grounds that this claim is preempted by ERISA, and alternatively on the grounds that Section 4224 provides no express or implied private right of action. Although not preempted by ERISA, there is no private right of action under Section 4224, and accordingly, plaintiff's state law claim must be dismissed.

#### 1. ERISA Preemption

One of the most notable characteristics of ERISA is the extent to which it preempts state laws which "relate to" employee benefit plans. Section 1144(a) of ERISA states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). Section 1144(b) of ERISA (the "saving clause") saves from the broad sweep of ERISA preemption "any law of any State which regulates insurance, banking, or securities." Under this section, causes of action based on state laws which "purport to regulate insurance" are not preempted "even if they also 'relate to' employee benefit plans." *Shackelton v. Conn. General Life Ins. Co.*, 817 F.Supp. 277, 281 (N.D.N.Y.1993).

The first issue to resolve with regard to the question of ERISA preemption is whether or not New York Insurance Law Section 4224 "relates to" an employee benefit plan. A state law "relates to" such a plan "in the normal sense of the phrase, if it has a connection with or reference to

such a plan."[1] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA does not, however, preempt state laws with " 'only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)). In order to evaluate whether the presumption *against* preemption normally applicable to federal laws has been overcome in a particular case, a court is required to "go beyond the unhelpful text [of 29 U.S.C. § 1144(a) ] and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 655, 115 S.Ct. 1671. Because Section 4224 directly regulates insurance plans, it does not have a connection that is merely "tenuous, remote, or peripheral" to an ERISA plan, and is not within "the scope of the state law that Congress understood would survive." *Id.* at 661, 665, 115 S.Ct. 1671. Accordingly, Section 4224 is preempted by ERISA unless it is saved by application of the saving clause.

■ Whether or not Section 4224 is saved from preemption by the saving clause depends upon whether it is a law that "regulates insurance." Courts employ a two-part analysis to determine whether a state law regulates insurance. First, courts consider the "common-sense view" of the language of the saving clause itself.[2] If this so-called "common sense" test is met, courts then look to the case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1101 *et seq.*, for guidance in interpreting the saving clause. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Federal case law under the McCarran–Ferguson Act has developed a three-prong test used to determine whether a particular practice involves the business of insurance. A court is to consider:

[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 743, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). While all three factors are relevant to the ultimate determination of whether a particular practice involves the business of insurance, it is not essential that a statute satisfy all three prongs of . this test. *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 373–74, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (hereinafter *"Ward "*). These three factors are guideposts, "not separate essential elements," in the determination of whether or not a particular practice involves the business of insurance. *Id.* at 373, 119 S.Ct. 1380.

---

1. The Supreme Court has acknowledged the confusion generated by its decisions interpreting this language, noting that the statutory language provides little help in interpreting the scope of ERISA preemption, because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere.' " *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting H. James, Roderick Hudson xli (New York ed., World's Classics 1980)).

2. Because it is clear that Section 4224 is a law which "regulates insurance" within the common sense meaning of that phrase, the analysis will focus on the application of the McCarran–Ferguson test.

It is clear that Section 4224 does regulate insurance within the meaning of 1144(b)(2)(A). The prohibitions of Section 4224 have "the effect of transferring or spreading a policyholder's risk" by prohibiting accident and health insurers from refusing to insure persons within a particular class for discriminatory reasons, or from discriminatorily offering policies on different terms and conditions than those available to policyholders generally. Section 4224 is also "an integral part of the policy relationship between the insurer and the insured," because by prohibiting the inclusion of discriminatory terms in insurance policies, it "limit[s] the type of insurance that an insurer may sell to the policyholder." *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. 2380. *See also PAS v. Travelers Ins. Co.,* 7 F.3d 349, 355 (3d Cir.1993) ("A law that prohibits certain policy provisions may be every bit as integral to the insurer-insured relationship as one that mandates the inclusion of certain terms."). Finally, the third prong is met because "the statute is explicitly aimed at—and solely applicable to—the insurance industry." *Natoli v. First Reliance Standard Life Ins. Co.,* 00–CV–5914, 2001 WL 15673, slip op. at 8 (S.D.N.Y. January 5, 2001) (citing *Ward,* 526 U.S. at 375, 119 S.Ct. 1380). Accordingly, New York Insurance Law § 4224 is not preempted by ERISA.

## 2. *Implied Private Right of Action*

■ However, this determination does not end the inquiry on this motion. Defendants have also argued that plaintiff's state law claim must be dismissed because there is no private right of action under Section 4224. This appears to be a novel question under New York law.

In support of their argument against finding a private right of action under Section 4224, defendants rely upon several New York cases, involving other sections of the Insurance Law, which hold that there is no private right of action under the sections at issue in those cases. In opposition, plaintiff cites several state and federal cases which involved claims brought under Section 4224. The question of the existence of a private right of action under Section 4224 does not appear to have been raised in any of the cases cited by either side.

■ In the absence of any controlling authority, New York courts apply a three-part inquiry to determine whether or not a private right of action should be implied where the statute at issue is silent as to the existence of such a right. This test is whether (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of such a right would be consistent with the legislative scheme. *Uhr v. East Greenbush Central Sch. Dist.,* 94 N.Y.2d 32, 38, 698 N.Y.S.2d 609, 720 N.E.2d 886 (1999).

In the instant case, it is clear that Sparkes is not a member of a class for whose *particular benefit* the statute was enacted. Section 4224 applies to discrimination in the terms and conditions of insurance plans generally, and not merely to discrimination against any particular class of individuals. *See Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506, 547–48 (S.D.N.Y.1997) (Section 4224's prohibitions on discrimination not limited to "small, insular minority groups."). As such, it cannot be said that Section 4224 was enacted for the "particular benefit" of persons with disabilities, as the statute applies with equal force to all forms of discrimination—be it based on race, age, or gender. *Id.*

Moreover, while implying a private right of action would likely further the legislative purpose of eliminating discrimination by insurers, such an implied right of action would not be consistent with the legislative scheme. Section 109 of the Insurance Law establishes the procedures for enforcement of various provisions of the Insurance Law by the Superintendent of Insurance. It does not provide for a private right of

action. *Buccino v. Continental Assur. Co.,* 578 F.Supp. 1518, 1526 (S.D.N.Y.1983). Where the legislature intended that a particular provision of the Insurance Law be enforced through a private right of action, it expressly so provided in the terms of the statute. *See, e.g.,* Insurance Law §§ 3420, 4226. Accordingly, because implying a private right of action would be inconsistent with two of the three prongs of the test set forth by the New York Court of Appeals in *Uhr,* no such right will be implied in this case. Plaintiff's claim under Section 4224 must be dismissed.

### B. *Plaintiff's ERISA Claims*

■ With regard to plaintiff's first and second causes of action under ERISA, these claims involve factual disputes that preclude a grant of summary judgment to either side.

As noted above, there is considerable dispute between the parties as to whether or not plaintiff, in fact, suffers from CFS, or whether her symptoms are attributable to depression. This dispute is at the heart of this lawsuit. Summarized briefly, plaintiff contends that Northwestern improperly concluded that her symptoms were caused by depression (a mental health condition) based on the lack of an apparent physical cause for her condition. She argues that this diagnosis was improper because CFS is a "diagnosis of exclusion"— in other words, because there is no known cause of CFS, doctors diagnose it by excluding all other possible physical causes. Plaintiff argues that Northwestern improperly failed to consider evidence that she did not suffer from depression, and lacked any reasonable medical basis for its determination that Sparkes suffered from depression. Northwestern argues in oppo-

sition that it had more than enough evidence in Sparkes' file to conclude that she did, in fact, suffer from depression and not CFS.

Each side has offered voluminous support for their respective positions, consisting of depositions, medical records, scholarly publications, affidavits, newspaper articles, and more.[3] Viewing each side's submissions in the light most favorable to the opposing party, an issue of fact remains for trial as to the cause of plaintiff's disability. This dispute precludes a grant of summary judgment to either side on plaintiff's first and second causes of action under ERISA.

Moreover, there are significant disputes as to whether or not Sparkes' claim was appropriately investigated by Northwestern prior to its February 26, 1996, decision to terminate her benefits. Plaintiff contends that the investigation conducted by Northwestern was superficial, and therefore, wholly inadequate to support its conclusion that she did not suffer from CFS. In opposition, Northwestern has argued that it did conduct a sufficient investigation of Sparkes' claim in that Dr. Bradley Fancher reviewed Sparkes' file and concluded that, in his medical opinion, the file did not support the conclusion that Sparkes suffered from CFS. Again, viewing each side's submissions in the light most favorable to the other, neither has demonstrated an absence of disputed material fact on this issue.

Therefore, because there are disputes over material facts as to plaintiff's ERISA claims, summary judgment is not warranted for either side as to these causes of action. Accordingly, both plaintiff's and defendants' motions for summary judg-

---

**3.** For example, defendants have offered evidence purporting to show that Sparkes' lifestyle is inconsistent with that of someone suffering from CFS. Defendants have produced a newspaper article purportedly written by Sparkes, which describes how she traveled to New York City for a Stephen King booksigning. Defendants also produced an email written by Sparkes, wherein she planned a long drive to visit someone in Connecticut. These facts may ultimately prove to be significant, depending upon the medical and other testimony at trial. At this point in the litigation, however, such facts serve only to highlight the extent to which the material facts in this case are in dispute.

ment must be denied as to plaintiff's first and second causes of action.

## V. CONCLUSION

After careful consideration of the objections and submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that

1. Plaintiff's motion for partial summary judgment is DENIED; and

2. Defendants' motion for summary judgment is GRANTED in part and DENIED in part as follows:

a. Defendants' motion for summary judgment is DENIED as to plaintiff's first and second causes of action under ERISA;

b. Defendants' motion for summary judgment is GRANTED as to plaintiff's third cause of action under New York Insurance Law § 4224; and

3. Plaintiff's third cause of action is DISMISSED.

IT IS SO ORDERED.