[867 NYS2d 169]

AHA Sales, Inc., Appellant, v Creative Bath Products, Inc., et al., Respondents.

Second Department, November 12, 2008

8

## APPEARANCES OF COUNSEL

*Robert L. Folks & Associates, LLP*, Melville (*Schoonover, Andrews & Rosenthal, LLC [Douglas A. Andrew]* of counsel), for appellant.

*Lazer, Aptheker, Rosella & Yedid, P.C.*, Melville (*Menaker & Herrmann LLP [Richard G. Menaker* and *Nicholas F. Gaffney]* of counsel), for respondent.

## OPINION OF THE COURT

DICKERSON, J.

This appeal requires us to determine, inter alia, whether we should recognize that a sales representative has an implied private right of action to enforce the terms of Labor Law § 191-b, as well as whether a sales representative may rely on both breach of contract and quasi-contractual theories of recovery under the circumstances of this case. We hold, as a matter of first impression, that a sales representative has an implied private right of action to enforce Labor Law § 191-b against a corporation to which it provides services and that, under the circumstances of this case, the plaintiff sales representative also adequately stated a cause of action under Labor Law § 191-c. We further conclude that the plaintiff may prosecute its claims against that corporation sounding in breach of fiduciary duty, quantum meruit, and unjust enrichment, but does not have a cause of action based upon promissory estoppel. Moreover, although the plaintiff has a cause of action against the corporation for an accounting, it has no cause of action against the corporation's president and majority shareholder, in his personal capacity, for that or any other relief.

Factual Background

AHA Sales, Inc. (hereinafter the plaintiff) is in the business of acting as a sales representative for manufacturers, and the defendant Creative Bath Products, Inc. (hereinafter Creative) is in the business of manufacturing and importing bath products for sale to retail stores. The defendant Mathias Meinzinger owns and exercises a controlling interest in Creative, and is Creative's president. Creative and the plaintiff had a relationship dating back to approximately 1984, when Creative appointed the plaintiff as one of its sales representatives. Subsequently, as a sales representative for Creative, the plaintiff increased the revenue from Creative's existing accounts, which included Linens & Things, Bed Bath & Beyond and Luxury Linens, and introduced new accounts, which included Barnes & Noble and Macy's. The plaintiff more than doubled the number of accounts it worked on for Creative from 1997 through 2004, and, in 2004, the plaintiff's efforts generated more than $26 million in sales revenue for Creative. Creative was the plaintiff's largest manufacturing customer and represented approximately one half of the plaintiff's revenues. From 2000 through 2004, the plaintiff earned the sum of approximately $425,000 in commissions on its sales of Creative's products, and the plaintiff accounted for approximately 30% of Creative's total sales of products. Since the plaintiff did not contract with or service other businesses whose products competed with Creative's products, it was substantially dependent upon Creative.

According to the allegations in the complaint, the plaintiff's relationship with Creative was one of trust and confidence, in that it entrusted its future to Creative, based on statements and promises made to it by Creative and Meinzinger, as well as the conduct of Creative and Meinzinger. Had it not done so, the plaintiff claims it would have been an independent business entity because it would have elected to represent businesses other than Creative. The plaintiff claimed that Creative and Meinzinger exercised substantial control over its business, and argued that Creative required that it invest time, resources, and money servicing Creative, to the exclusion of other businesses and product lines that were available to it. For instance, the plaintiff alleges that Creative and Meinzinger determined the commissions to be paid and the deductions to be charged to the plaintiff, they demanded that the plaintiff perform services for Creative other than the services of an independent sales representative, and allocated overhead, operational, and marketing costs to the plaintiff.

The plaintiff alleges that Creative and Meinzinger refused to provide it with a single, written contract covering all of its accounts with Creative as a sales representative, and refused to provide individual, written accounts for each of the plaintiff's accounts with Creative as a sales representative. However, the plaintiff claims that Creative and Meinzinger orally entered into a binding sales representative agreement with it, under which the parties operated after the plaintiff assumed its corporate form in 1993. The plaintiff contends that Creative represented to it that a written agreement was unnecessary because the plaintiff could trust Meinzinger and Creative. The plaintiff asserts that it received oral assurances from Creative and Meinzinger that it would continue to be Creative's sales representative as long as Meinzinger owned Creative and did not sell it to a third party, provided that Creative still operated "in the territory" that it historically covered. Despite the absence of a formal written omnibus agreement, on several occasions, the parties nonetheless reduced terms and conditions of their agreement to writing. For instance, in a memorandum dated March 14, 2005, and addressed to all of its sales representatives, Creative, after confirming that it had previously been required to pay commissions within 15 days from the end of the month in which its products had shipped, unilaterally changed the timing of payments to 45 days from the end of the month of shipment.

According to the plaintiff, Meinzinger and Creative induced it to continue to serve as a sales representative for Creative by providing it with the assurances and promises that formed the basis of the sales representative agreement and by concealing Creative's undisclosed intention to terminate its relationship with the plaintiff. The plaintiff alleges, in the complaint, that it reasonably and detrimentally relied on Meinzinger's and Creative's representations in this regard.

The plaintiff further contends, in the complaint, that Creative and Meinzinger also failed to timely pay all commissions it earned before terminating both the sales representative agreement and Creative's relationship with it. Additionally, the plaintiff claims that, while its relationship with Creative was still ongoing, Creative and Meinzinger requested that it perform nonsales representative services, and that they accepted the benefit of those services, but that they then refused to pay it the reasonable value of those services.

In the summer of 2004, after hiring a consultant to review its business, Creative decided to terminate the plaintiff's services.

The plaintiff alleges that Creative and Meinzinger affirmatively concealed that determination from it for approximately four months, in order to induce it to provide all of the substantial preorder services for existing accounts and to finalize those programs that would be used to obtain and replenish orders. The plaintiff claims that, once it received confirmations from customers that preorder services were completed, Creative and Meinzinger terminated its services before the orders were received, and thereafter refused to pay it any commissions for that work for the very reason that the orders had not yet been received. Creative terminated the plaintiff's services, purportedly without notice, at a meeting held on or about April 13, 2005.

The plaintiff alleges that Creative conditioned payment of commissions on the return of certain property in the plaintiff's possession, and declared that it would withhold 25% of the commissions owed to the plaintiff as security against a final reconciliation for returns, allowances, and other adjustments to commissionable sales. The plaintiff contended that, although it returned all property in its possession that belonged to Creative, Creative did not pay it all of the commissions and other compensation that it was owed. Although the plaintiff demanded that Creative pay all commissions wrongfully withheld from it, it nonetheless offered to accept less than all of the compensation it was owed if it received immediate payment from Creative. When Creative did not pay as demanded, the plaintiff revoked its compromise offer and demanded a full accounting of all commissions and compensation owed, paid, or payable to it.

The Plaintiff's Causes of Action

In the complaint, the plaintiff asserted 10 causes of action against the defendants. In the first and second causes of action, the plaintiff alleged that Creative violated Labor Law §§ 191-b and 191-c. In the third cause of action, the plaintiff claimed that Creative breached the parties' oral sales representative agreement, alleging that Creative unilaterally changed commission rates, converted accounts procured by the plaintiff to "house" accounts, transferred accounts procured by the plaintiff to other sales representatives, and took charge-backs and deductions against the plaintiff's earned commissions to which it was not entitled. The plaintiff asserted the fourth cause of action against Creative, alleging breach of the covenant of good faith and fair dealing. In the fifth cause of action, the plaintiff sought to recover in quantum meruit and for unjust enrichment, alleging

that the defendants accepted, retained, and used the benefit of the services it rendered without paying it the reasonable value of those services or reimbursing it for expenses incurred in providing such services. In the sixth cause of action, the plaintiff alleged that Creative is subject to promissory estoppel, based on promises made by Creative which induced it to perform services for Creative, and which it reasonably relied upon to its detriment. The seventh cause of action is asserted against Creative, and sought to recover damages for breach of fiduciary duty. In the eighth cause of action, the plaintiff sought an accounting, from Creative, for all material information, the commissions and compensations Creative owes the plaintiff, and the profits Creative has made as a result of its alleged breaches of fiduciary duty to the plaintiff. In the ninth cause of action, the plaintiff alleged that Meinzinger was personally liable for inducing Creative to breach the sales representative agreement and its fiduciary obligations to the plaintiff. Pursuant to the tenth cause of action, the plaintiff sought to pierce the corporate veil and hold Meinzinger personally liable for the damages sustained by the plaintiff "at the hands of Creative."

The Defendants' Motion to Dismiss

By notice of motion dated July 5, 2006, the defendants moved pursuant to CPLR 3211 (a) (7) to dismiss the first, second, fifth, sixth, seventh, eighth, ninth, and tenth causes of action, but did not move to dismiss the third and fourth causes of action. The defendants argued that the first cause of action, alleging a violation of Labor Law § 191-b, failed to state a cause of action because the statute did not expressly provide for a direct private right of action by a sales representative against its principal. They argued that the second cause of action, alleging a violation of Labor Law § 191-c, also failed to state a cause of action because it failed to allege, as required by the statute, that a point had been reached after the plaintiff was terminated when its final commissions were deemed "earned." The defendants argued that fifth and sixth causes of action, sounding in quantum meruit, unjust enrichment, and promissory estoppel, were subject to dismissal because those claims were barred by the plaintiff's breach of contract claims. As to the seventh, eighth, and ninth causes of action, alleging a breach of fiduciary duty and seeking an accounting, the defendants argued that those claims failed because the complaint alleged no facts on which a fiduciary relationship could be premised. The defendants argued that the ninth cause of action, asserted against

Meinzinger, should be dismissed because it failed to allege that he committed any acts outside of his corporate capacity. The defendants further contend that the ninth and tenth causes of action provided no basis for the imposition of personal liability upon Meinzinger, and that the complaint purported to turn a straightforward dispute over the calculation of sales commissions into a personal action against Creative's president and majority shareholder and a purported challenge to Creative's proper discharge of its fiduciary duty.

The court granted the defendants' motion in all respects, and thus directed the dismissal of the ninth and tenth causes of action, which were asserted against Meinzinger, and the first, second, fifth, sixth, seventh, and eighth causes of action, which were asserted against Creative.

Discussion

<u>Labor Law § 191-b</u>

■■ The court granted that branch of the defendants' motion which was to dismiss the first cause of action against Creative, upon finding that no private right of action may be implied under Labor Law § 191-b. This constituted error. We recognize an implied private right of action under that statutory provision, and the plaintiff adequately stated such a cause of action here.

> Labor Law § 191-b provides as follows:
>
> "1. When a principal contracts with a sales representative to solicit wholesale orders within this state, the contract shall be in writing and shall set forth the method by which the commission is to be computed and paid.
>
> "2. The principal shall provide each sales representative with a signed copy of the contract. The principal shall obtain a signed receipt for the contract from each sales representative.
>
> "3. A sales representative during the course of the contract, shall be paid the earned commission and all other monies earned or payable in accordance with the agreed terms of the contract, but not later than five business days after the commission has become earned."

Labor Law § 191-b was enacted in 1987, along with Labor Law §§ 191-a and 191-c, as part of article 6 of the Labor Law,

governing payment of wages (*see* L 1987, ch 451, § 1). Labor Law § 191-a defines "[s]ales representatives" as independent contractors, in contrast to "commission" salespersons, who are classified as employees under Labor Law § 190 (6) and § 191 (1) (c) (*see* Labor Law § 191-a [d]). As the Appellate Division, First Department wrote in *Deutschman v First Mfg. Co.* (7 AD3d 363, 364 [2004]), "[n]o serious argument can be made that plaintiff, [a] salaried employee, was [an] independent contractor" (*see Goldberg v Select Indus.*, 202 AD2d 312, 315 [1994]).

While it is clear that Labor Law § 191-b does not expressly authorize a private right of action, one may be implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the statute; and (3) to do so would be consistent with the legislative scheme (*see Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]; *see also People v Grasso*, 11 NY3d 64 [2008]; *Pelaez v Seide*, 2 NY3d 186, 200 [2004]; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38 [1999]; *Bhandari v Isis*, 45 AD3d 619, 621 [2007]). As the Court of Appeals explained in *Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.* (76 NY2d 207, 212 [1990]), "[o]ur decisions have established that the most critical inquiry in determining whether to recognize a private cause of action where one is not expressly provided is whether such action would be consistent with the over-all legislative scheme."

The plaintiff has satisfied the first and second factors here. The statute is intended to benefit sales representatives who are not employees by ensuring that they are provided with written contracts and are paid in accordance therewith. Here, the plaintiff fits the statutory definition of "sales representative" because it is an entity which solicits orders in New York State and is an independent contractor (*see* Labor Law § 191-a [d]). Moreover, the legislative purpose is promoted by holding principals accountable by allowing independent contractor sales representatives to commence civil actions to recover unpaid commissions.

The third factor, requiring that a private cause of action under a statute be consistent with the legislative scheme, has also been satisfied. "[A] private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d at 634-635). However, a private right of

action "may at times further a legislative goal and coalesce smoothly with the existing statutory scheme" (*Uhr v East Greenbush Cent. School Dist.*, 94 NY2d at 40, citing *Doe v Roe*, 190 AD2d 463, 471 [1993] [a private cause of action alleging a violation of Public Health Law § 2780 (6) is not inconsistent with the legislative scheme, where it would be consistent with the common law and would merely provide an additional enforcement mechanism]).

Labor Law § 191-b is codified in article 6 of the Labor Law, pertaining to the payment of wages. Pursuant to Labor Law § 21 (1), the Commissioner of Labor (hereinafter the Commissioner) is authorized to "enforce all the provisions of [the Labor Law] and may issue such orders as he [or she] finds necessary directing compliance with any provision of this chapter, except as in this chapter otherwise provided." Moreover, Labor Law § 196 vests the Commissioner with specific authority under Labor Law article 6, among other things, to sue employers on wage claims assigned to him or her and to "institute proceedings on account of any criminal violation of any provision of [Labor Law article 6]" (Labor Law § 196 [1] [c]). Thus, Labor Law article 6 expressly provides for an official enforcement mechanism.

Where, as here, the Legislature clearly contemplated administrative enforcement of the statute, "[t]he question then becomes whether, in addition to administrative enforcement, an implied private right of action would be consistent with the legislative scheme" (*Uhr v East Greenbush Cent. School Dist.*, 94 NY2d at 40). A private right of action under Labor Law § 191-b would not be inconsistent with the legislative scheme of Labor Law article 6. The article contains language indicating that wage claims asserted by individuals, as well as by the Commissioner, are permissible. For instance, Labor Law § 198, pertaining to costs and remedies, provides for the recovery of costs and an attorney's fee "[i]n any action instituted upon a wage claim by an employee or the commissioner" (Labor Law § 198 [1], [1-a]). Moreover, the statute allows retroactive recovery of wages "whether such action is instituted by the employee or by the commissioner" (Labor Law § 198 [3]). Further, as discussed above, Labor Law § 196 refers to "assignment[ ] of claims for wages as defined in this article from employees" (Labor Law § 196 [1] [b]). Finally, the courts have permitted individual employees to recover on wage claims prosecuted under Labor Law article 6, specifically pursuant to Labor Law § 191 (1) (c) and

(d) (*see e.g. Dwyer v Burlington Broadcasters*, 295 AD2d 745, 745-746 [2002]; *Slotnick v RBL Agency*, 271 AD2d 365, 365-366 [2000]; *Epelbaum v Nefesh Achath B'Yisrael*, 237 AD2d 327 [1997]; *Kazakias v Bistricer*, 180 AD2d 666, 666-667 [1992]), and nothing in the statutory scheme of Labor Law article 6 suggests that a private cause of action should be available to commissioned salespersons who are employees for purposes of Labor Law § 191 (1) (c), but not available under Labor Law § 191-b to independent contractor sales representatives. Accordingly, the third factor of the *Sheehy* test has been satisfied and, accordingly, a private right of action under Labor Law § 191-b is permissible.

 The plaintiff's allegations that Creative breached its duty to pay commissions earned under the parties' oral and written agreements,[1] prior to Creative's termination of the parties' relationship, are sufficient to state a cause of action under Labor Law § 191-b (*cf. Phil Kriegel Assoc. v Lahm Knitting Mill*, 179 AD2d 539 [1992]). To the extent *Matter of Carrube v New York City Tr. Auth.* (291 AD2d 558, 558 [2002]) holds that there is no private cause of action under a statute whenever the body of law has a potent official enforcement mechanism, we decline to follow it, and it should not be followed in the future. Accordingly, the Supreme Court should not have granted that branch of the defendants' motion which was to dismiss the first cause of action, asserted against Creative, and alleging a violation of Labor Law § 191-b.

Labor Law § 191-c

The court granted that branch of the defendants' motion which was to dismiss the second cause of action, premised on Creative's alleged violations of Labor Law § 191-c, on the grounds that the complaint not only failed to contain the requisite allegations setting forth the elements of a claim, but also failed to provide specific notice of the transactions and occurrences underlying the claim, e.g., the date each commission was earned or to be paid to the plaintiff.

Labor Law § 191-c provides as follows:

---

1. The defendants' reliance on *Guterman v RGA Accessories* (196 AD2d 785 [1993]) is misplaced. In *Guterman*, the Appellate Division, First Department held that the defendant's failure to provide the plaintiff with a written contract in violation of Labor Law § 191-b did not "render[ ] enforceable an oral contract otherwise void" (*id.* at 786). Here, on the other hand, in addition to an oral agreement, the plaintiff alleges that various terms and conditions of the parties' agreement were in writing, and the defendants concede the existence of an agreement between the parties.

"1. When a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated.

"2. The earned commission shall be paid to the sales representative at the usual place of payment unless the sales representative requests that the commission be sent to him or her through the mails. If the commissions are sent to the sales representative by mail, the earned commissions shall be deemed to have been paid as of the date of their postmark for purposes of this section.

"3. A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements."

"Earned commission" is defined as

"a commission due for services or merchandise which is due according to the terms of an applicable contract or, when there is no applicable contractual provision, a commission due for merchandise which has actually been delivered to, accepted by, and paid for by the customer, notwithstanding that the sales representative's services may have terminated" (Labor Law § 191-a [b]).

Pursuant to CPLR 3013, "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense."

Here, the plaintiff alleges, inter alia, that Creative failed to pay it all commissions due after the termination of its relationship with Creative, and that Creative failed to pay the commissions, as required by the statute, five business days after the termination or within five business days after they became due. The court erroneously found that the plaintiff failed to specify that "a point had been reached after which Plaintiff's final commissions were deemed earned."

■ The plaintiff's allegations that the defendants failed to pay commissions within five days after termination of the relationship or within five days after they became due were sufficiently particular[2] to state a valid cause of action under Labor Law § 191-c. Unlike the complaint in *Slotnick v RBL Agency* (271 AD2d 365 [2000]), the complaint here contains allegations as to when payments were to be made periodically. Initially, payments were to be made 15 days after the end of the month of shipment, but Creative later unilaterally determined that payments would be made 45 days after the end of the month of shipment. Moreover, as stated above, the complaint here connected the defendants' failure to pay with the relevant statutory deadlines. Accordingly, the Supreme Court should not have granted that branch of the defendants' motion which was to dismiss the second cause of action, asserted against Creative, and alleging a violation of Labor Law § 191-c.

Quantum Meruit and Unjust Enrichment

The court granted that branch of the defendants' motion which was to dismiss the fifth cause of action, premised on quantum meruit and unjust enrichment, on the ground that the parties had entered into a valid contract, thus barring recovery under quasi-contractual theories.

To state a cause of action to recover in quantum meruit, a plaintiff must allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services allegedly rendered (*see Tesser v Allboro Equip. Co.*, 302 AD2d 589, 590 [2003]).

To state a cause of action to recover damages for unjust enrichment, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered' " (*Cruz v McAneney*, 31 AD3d 54, 59 [2006], quoting *Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2004]).

---

2. According to the plaintiff, after the termination of its relationship with Creative, its treasurer wrote to Creative, requesting a full accounting of all monies owed then or in the future, to which Creative replied that it was collecting data to enable it to calculate how much was due the plaintiff in additional commissions. Thus, it appears that at least some of the information required to determine when merchandise had been shipped and paid for, and, thus, when commissions were earned, may be within Creative's exclusive possession.

Recovery under quasi-contractual theories is, generally, inappropriate if there exists a valid and enforceable contract between the parties. "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388-389 [1987]; *see Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 593 [2007]; *Stark v City of New York*, 31 AD3d 530, 531 [2006]; *Mucerino v Firetector, Inc.*, 306 AD2d 330, 332 [2003]; *Landcom, Inc. v Galen-Lyons Joint Landfill Commn.*, 259 AD2d 967, 967-968 [1999]). However,

> "[w]here, as here, there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi-contract as well as breach of contract, and will not be required to elect his or her remedies" (*Hochman v LaRea*, 14 AD3d 653, 654-655 [2005]; *see Zuccarini v Ziff-Davis Media*, 306 AD2d 404, 405 [2003]).

██ Here, the plaintiff alleges that a contract exists, based on both oral and written agreements. Moreover, the specific written agreements alleged to exist clearly do not cover the parties' dispute, as they relate only to compensation for services rendered by the plaintiff in connection with particular accounts. The plaintiff also alleges that it rendered services outside of the parties' agreement, for which it was not compensated or reimbursed by Creative. "Contrary to the defendant's contention, these equitable causes of action need not be dismissed because there existed a written agreement between the parties . . . Rather, some of the compensation demanded was allegedly earned outside of the scope of the parties' written agreement" (*Snitovsky v Forest Hills Orthopedic Group, P.C.*, 44 AD3d 845, 846 [2007]). Accordingly, the Supreme Court should not have granted that branch of the defendants' motion which was to dismiss the fifth cause of action, asserted against Creative, and alleging claims sounding in quantum meruit and unjust enrichment.

Promissory Estoppel

██ The court correctly granted that branch of the defendants' motion which was to dismiss the sixth cause of action, premised on promissory estoppel. "The elements of a cause of action based upon promissory estoppel are a clear and unambiguous promise,

reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise" (*Williams v Eason*, 49 AD3d 866, 868 [2008]; *see Gurreri v Associates Ins. Co.*, 248 AD2d 356, 357 [1998]). However, the doctrine of promissory estoppel is limited to cases where the promisee suffered an "unconscionable injury" (*D & N Boening v Kirsch Beverages*, 99 AD2d 522, 524 [1984], *affd* 63 NY2d 449 [1984]; *Dunn v B&H Assoc.*, 295 AD2d 396, 397 [2002]).

It appears that, here, the plaintiff did not suffer unconscionable injury since it derived substantial revenues over the course of many years in reliance on the alleged representations by Creative and Meinzinger (*see D & N Boening v Kirsch Beverages*, 99 AD2d at 524 ["(A)ll of these acts took place over . . . (a long) period . . . The lengthy duration of the agreement points to the fact that plaintiff . . . derived a substantial income from . . . sales throughout"]).

Breach of Fiduciary Duty by Creative

The court correctly granted that branch of the defendants' motion which was to dismiss the ninth cause of action, asserted against Meinzinger to recover damages for breach of fiduciary duty (*see* infra), but erred in granting that branch of their motion which was to dismiss the seventh and eighth causes of action, asserted against Creative, and alleging a breach of fiduciary duty and seeking an accounting, on the ground that the plaintiff failed to plead special circumstances sufficient to convert a conventional business relationship into a fiduciary relationship.

A fiduciary relationship "whether formal or informal, 'is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another . . . [and] might be found to exist, in appropriate circumstances, between close friends . . . or even where confidence is based upon prior business dealings' " (*Apple Records v Capitol Records*, 137 AD2d 50, 57 [1988], quoting *Penato v George*, 52 AD2d 939, 942 [1976]). "It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed" (*Penato v George*, 52 AD2d at 942). However, a conventional business relationship, without more, is insufficient to create a fiduciary relationship (*see Payrolls & Tabulating v Sperry Rand Corp.*, 22 AD2d 595, 598 [1965]). Rather, a plaintiff must make a "showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one . . . , such as control by one party of the other for the

good of the other" (*L. Magarian & Co. v Timberland Co.*, 245 AD2d 69, 70 [1997]).

■ The plaintiff sufficiently alleged the existence of a fiduciary relationship between it and Creative. The complaint contains allegations that Meinzinger induced the plaintiff to continue serving as its sales representative for many years, for the most part without a written contract, by representing that it could trust him and Creative, and that the plaintiff would continue as a sales representative for Creative as long as Meinzinger owned Creative. At Creative's and Meinzinger's insistence, the plaintiff refrained from forming other contractual relationships with Creative's competitors. Further, Creative and Meinzinger demanded that the plaintiff render additional services outside of the parties' purported agreement, without compensation, on the ground that the services were the plaintiff's contribution to the "team" or "venture." According to the plaintiff, the defendants also "allocated overhead, operational and marketing costs" to its operations and expenses. Under those circumstances, "[i]t can be said that from such a long enduring relation was born a special relationship of trust and confidence, one which existed independent of [any] contractual duties" (*Apple Records v Capitol Records*, 137 AD2d at 57).

> "A distributorship agreement may, in some rare instances, create a confidential relationship out of which a duty of fiduciary care arises . . . Whether plaintiff was obliged to accept the requirements allegedly imposed by defendants because of defendants' position of dominance or whether plaintiff assumed such obligations voluntarily are questions of fact not properly decided on a motion to dismiss" (*Lake Erie Distribs. v Martlet Importing Co.*, 221 AD2d 954, 955-956 [1995]; see *Zimmer-Masiello, Inc. v Zimmer, Inc.*, 159 AD2d 363, 365 [1990]).

Moreover, the complaint's allegations that Creative and Meinzinger deceived the plaintiff into continuing to render services when they knew that they planned to terminate the plaintiff's services shortly afterward, sufficed to show that Creative breached its fiduciary duty to the plaintiff.

Accounting

■ The eighth cause of action properly seeks an accounting of, inter alia, money owed by Creative to the plaintiff (see *LoGerfo v Trustees of Columbia Univ. in City of N.Y.*, 35 AD3d

395, 397 [2006]). "The 'right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest' " (*id.*, quoting *Palazzo v Palazzo*, 121 AD2d 261, 265 [1986]).

Breach of Fiduciary Duty by Meinzinger

■ The court properly granted that branch of the defendants' motion which was to dismiss the ninth cause of action, asserted against Meinzinger, and seeking to recover damages for Meinzinger's conduct in inducing a breach of contract and aiding and abetting a breach of fiduciary duty. "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach" (*Kaufman v Cohen*, 307 AD2d 113, 125 [2003]).

> "Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty . . . Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability" (*id.*).

Here, however, the plaintiff's allegations are legally insufficient to establish that, assuming Meinzinger knowingly induced Creative to breach its contract with the plaintiff or that he aided and abetted Creative in breaching its fiduciary duty to the plaintiff, he did so in any capacity other than his capacity as a corporate officer. " '[A] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer' " (*BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am.*, 247 AD2d 565, 567 [1998], quoting *Murtha v Yonkers Child Care Assn.*, 45 NY2d 913, 915 [1978]; *see S.F.P. Realty Corp. v G.S. Rockaway Dev.*, 206 AD2d 417, 417 [1994]).

Piercing the Corporate Veil

■ The court properly granted that branch of the defendants' motion which was to dismiss the tenth cause of action, which sought to impose personal liability on Meinzinger. In general, a party seeking to pierce the corporate veil must establish that "(1) the owners exercised complete domination of the

corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury" (*Matter of Goldman v Chapman*, 44 AD3d 938, 939 [2007], quoting *Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). Mere conclusory statements that a corporation is dominated or controlled by a shareholder are insufficient to sustain a cause of action against a shareholder in his individual capacity (*see Itamari v Giordan Dev. Corp.*, 298 AD2d 559, 560 [2002]; *see also Andejo Corp. v South St. Seaport Ltd. Partnership*, 40 AD3d 407, 407 [2007]). "Factors to be considered by a court in determining whether to pierce the corporate veil include failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use" (*Millennium Constr., LLC v Loupolover*, 44 AD3d 1016, 1016-1017 [2007]; *see John John, LLC v Exit 63 Dev., LLC*, 35 AD3d 540, 541 [2006]). Other relevant factors that must be included in the calculus are the use of "common office space, address and telephone numbers of corporate entities . . . [and] the amount of business discretion displayed by the allegedly dominated corporation" (*Shisgal v Brown*, 21 AD3d 845, 848 [2005]). The plaintiff failed to set forth sufficient specific factual allegations that Meinzinger so controlled or dominated Creative as to warrant piercing the corporate veil.

Accordingly, the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (7) to dismiss the first, second, fifth, seventh, and eighth causes of action asserted against Creative and substituting therefor provisions denying those branches of the motion and, as so modified, the order is affirmed insofar as appealed from.

SPOLZINO, J.P., COVELLO and ENG, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (7) to dismiss the first, second, fifth, seventh, and eighth causes of action asserted against the defendant Creative Bath Products, Inc. and substituting therefor provisions denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the appellant.