[632 NYS2d 169]

Bernard Henry et al., Respondents, v Morris Isaac et al., Appellants.

Second Department, October 10, 1995

APPEARANCES OF COUNSEL

*Mulholland, Minion & Roe,* Williston Park *(Karen J. Walsh* and *Vincent D. McNamara* of counsel), for appellants.

*Patterson, Belknap, Webb & Tyler,* New York City *(Lisa E. Cleary* of counsel, and *MFY Legal Services, Inc.,* New York City *(Jeanette Zelhof* of counsel), for respondents. (One brief filed.)

**OPINION OF THE COURT**

ALTMAN, J.

The operation of adult care facilities is governed by Social Services Law article 7 and the regulations promulgated thereunder. The primary issue on this appeal is whether a resident of such a facility has a private right of action under the Social Services Law against the operator of the facility for failure to provide the services and level of care mandated by the statute and regulations. We conclude that a private right of action exists.

The plaintiffs are a resident and former resident of the defendant New Whitman Home for Adults (hereinafter Whitman Home), an adult care facility owned and operated by the individual defendants. Whitman Home is an adult home which provides long-term residential care for approximately 240 adults who do not require continuous medical or nursing care, but are unable to live independently because of age or disability-related limitations *(see,* 18 NYCRR 485.2 [b]). Authorization to establish and operate the facility was obtained pursuant to an operating certificate issued by the New York State Department of Social Services (hereinafter DSS) in accordance with Social Services Law § 460-b.

DSS has "the comprehensive responsibility for the development and administration of programs, standards and methods of operation" for adult residential care facilities such as Whitman Home (Social Services Law § 460). Pursuant to statutory authorization, DSS has promulgated regulations applicable to all adult care facilities subject to its supervision

(Social Services Law § 461 [1]). These regulations establish minimum standards of care for the residents and mandate that certain services be provided (see, 18 NYCRR parts 485-487).

The plaintiffs commenced this action asserting 10 causes of action sounding in, *inter alia,* breach of contract, negligence and other torts, and violations of certain Federal statutes. Only the fourth cause of action asserts a statutory claim for violation of the Social Services Law and regulations, although the defendants' alleged failure to comply with the statutory and regulatory requirements underlies all of the plaintiffs' causes of action. The plaintiffs seek declaratory and injunctive relief as well as monetary damages.

Contending that the complaint simply constituted a claim for violation of the Social Services Law, the defendants moved for summary judgment on the grounds that the plaintiffs: (1) lack the legal capacity to bring this lawsuit because the power to regulate the adult care industry has been vested solely in DSS, (2) have no private right to seek enforcement of the applicable statutes and regulations, and (3) failed to state a cause of action because only DSS has the authority to regulate the operation of adult care facilities and enforce the law governing those facilities. In addition, the defendants contended that the Supreme Court did not have subject matter jurisdiction over this action. The court, without elaboration, denied the motion.

On appeal, the defendants raise the same contentions, using the terms lack of capacity or standing to sue and failure to state a cause of action interchangeably. The thrust of their argument, however, is that the plaintiffs have no private right of action for violations of the Social Services Law and regulations.

■ In making their argument, the defendants fail to distinguish the plaintiffs' nine common-law, Federal, and other statutory causes of action from the single cause of action asserted under the Social Services Law. While those nine causes of action allege that the defendants have failed to comply with their obligations to provide the services mandated by certain specified regulations, the plaintiffs' right to assert such claims derives from the common law or other statutes and not from the Social Services Law.

With respect to those nine causes of action, therefore, the question is not whether a private right of action exists, but

whether Social Services Law article 7 preempts such claims *(see, Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314). Clearly, State law does not preempt the Federal statutory claims. The general rule regarding common-law claims is that " 'when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute' " *(Burns Jackson Miller Summit & Spitzer v Lindner, supra,* at 324, quoting *Candee v Hayward,* 37 NY 653, 656). There is nothing in the text of the Social Services Law or regulations to indicate that its provisions are exclusive or intended to preempt the plaintiffs' right to seek relief pursuant to any existing common-law or other statutory cause of action. To the contrary, in enacting Social Services Law article 7, the Legislature specifically provided that "[n]o existing right or remedy of any character shall be lost, impaired or affected by reason of this act" (L 1977, ch 669, § 25).

Having concluded that the plaintiffs' first through third and fifth through tenth causes of action are not preempted by the Social Services Law, we do not otherwise address the sufficiency or merits of those claims. On this appeal, the defendants do not specifically challenge any particular cause of action, but rather, make the generalized claim that the plaintiffs have no private right of action under the Social Services Law. Therefore, the issue of the viability of each of those individual causes of action is not before us. We turn, then, to the plaintiffs' fourth cause of action which does assert a claim for violation of the Social Services Law and regulations.

■ Where, as here, there is no express legislative authorization,* whether the violation of a statute gives rise to an independent private cause of action is a matter for the courts *(see, Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d, *supra,* at 325). The three primary factors to be considered in making such a determination are: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the

---

* After this action was commenced, the Legislature amended Social Services Law § 461-c by, *inter alia,* adding subdivision (2-a) *(see,* L 1994, ch 734, § 1) which provides that a resident may maintain an action to recover damages for breach of the warranty of habitability and/or violation of a written admission agreement, claims which are not the subject of the plaintiffs' fourth cause of action.

legislative scheme" *(Sheehy v Big Flats Community Day,* 73 NY2d 629, 633; *see, Burns Jackson Miller Summit & Spitzer v Lindner, supra,* at 325; *CPC Intl. v McKesson Corp.,* 70 NY2d 268, 276).

The defendants properly concede that the plaintiffs are among the intended beneficiaries of Social Services Law article 7. They contend, however, that recognition of a private right of action would be inconsistent with both the legislative purpose and scheme. We disagree.

Article 7 was added to the Social Services Law by chapter 669 of the Laws of 1977, an Act which also amended provisions of various other statutes. The stated purposes of the Act were to transfer administrative functions, powers and duties relating to the supervision of residential care programs and facilities to DSS and "to more clearly delineate the respective responsibilities" of DSS and other State and local agencies (L 1977, ch 669, § 1). Responsibility for supervision of such facilities was previously shared by a number of State agencies. By establishing DSS as the agency with direct and primary responsibility, the legislation sought to assure effective and efficient implementation of uniform standards *(see,* Governor's Mem approving L 1977, ch 669, 1977 NY Legis Ann, at 216-217).

Amendments to article 7, also enacted in 1977, addressed problems affecting the quality of care provided and quality of life available to residents of adult care facilities. In approving the legislation, the Governor noted that "[t]he bills represent important first steps in assuring that residential facilities for adults provide the quality of care their residents and future residents require and expect. These steps, together with the enforcement tools given to [DSS] * * * can be effective in meeting this goal" (Governor's Mem approving L 1977, chs 670-674, 1977 NY Legis Ann, at 219).

In addition to its supervisory powers, DSS was given broad enforcement powers to ensure compliance with statutory and regulatory requirements, including the authority to conduct investigations, assess civil penalties, revoke or suspend operating certificates, and call upon the Attorney-General to seek equitable relief *(see,* Social Services Law § 460-d). Residents were given certain rights and the entitlement to certain services *(see,* Social Services Law §§ 461-c, 461-d). DSS promulgated regulations which further defined both the authority of DSS and the standard of care and services to which residents are entitled *(see,* 18 NYCRR parts 485-487).

Recognition of a private right of action would promote the legislative purpose which was not exclusively to consolidate responsibility for the supervision of adult care facilities in DSS, but also to ultimately ensure that individual residents are provided with a certain level and quality of care. Further, an implied private right of action is not inconsistent with the legislative scheme *(but see, Carrier v Salvation Army,* — AD2d —, 1995 NY Slip Op 6558 [1st Dept, July 6, 1995]). In this regard, Social Services Law article 7 is distinguishable from the Martin Act *(see,* General Business Law § 352 *et seq.),* which does not give rise to an implied private right of action *(see, CPC Intl. v McKesson Corp.,* 70 NY2d 268, *supra).*

While the supervisory and enforcement powers given to DSS are indeed broad and comprehensive, Social Services Law article 7 does more than create an enforcement mechanism *(compare, CPC Intl. v McKesson Corp., supra,* at 276-277). The Social Services Law and the implementing regulations are not simply remedial in nature, but afford the residents various rights and impose an affirmative duty on the operators of adult care facilities to provide specified services and care. The law is directed toward protecting the health, safety, and well-being of a particular class of individuals, and is not primarily designed to provide a mechanism for preventing harm to the public in general, as is the Martin Act *(see, People v Federated Radio Corp.,* 244 NY 33). Benefits derived from the obligations imposed on operators inure directly and personally to the individual residents, who have private, contractual relationships with the operators. Violations of the statutory and regulatory requirements directly and adversely affect the well-being of those individuals. While DSS may be primarily charged with enforcing the law and generally protecting the rights of residents, the remedies available to DSS do not adequately address the harm that a particular individual may suffer. Recognition of a private right of action pursuant to which individual residents can seek redress for wrongs personally suffered would augment the existing enforcement devices and enhance a legislative scheme which, in part, imposes affirmative duties for the protection of those very individuals *(see, Doe v Roe,* 190 AD2d 463, 471).

The defendants' remaining contention that the Supreme Court lacks subject matter jurisdiction over this action is without merit.

Accordingly, the order of the Supreme Court is affirmed, with costs.

Copertino, J. P., Santucci and Krausman, JJ., concur.

Ordered that the order is affirmed, with costs.