OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant First United American Life Insurance Company (First United) moves, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the second, fourth, sixth, eighth, tenth, twelfth, and thirteenth causes of action in plaintiff Maimonides Medical Center’s (Maimonides) complaint. Plaintiff alleges breach of contract and violation of Insurance Law § 3224-a (the Prompt Pay Law) in connection with six patients that plaintiff treated who were each covered under one of defendant’s supplemental Medicare insurance (Medigap) plans. Alternatively, plaintiff pleads a single cause of action for unjust enrichment. Defendant contends that the Prompt Pay Law, which authorizes the recovery of delinquent health insurance claim payments plus interest at a rate the greater of 12% or the rate set by the Commissioner of Taxation and Finance for corporate taxes, contains no express or implied private right of action and that plaintiffs demands for such relief should therefore be dismissed. Defendant also argues that plaintiffs cause of action for unjust enrichment is duplicative of its breach of contract claims and is thus improper. Should the contracts be deemed invalid or inappli *524 cable, defendant maintains, the relationship between First United and Maimonides would be too tenuous to sustain a cause of action for unjust enrichment.
Background
At various times from 2007 until 2011, Maimonides, a not-for-profit hospital located in Brooklyn, New York, provided inpatient health care services to six patients who, during each of their hospital stays, held Medigap policies issued by insurance company First United. Each patient’s policy, pursuant to state regulations establishing standardized Medigap plans, provided 100% coverage of hospitalization expenses after the patient exhausted his or her Medicare coverage, subject to a lifetime maximum of 365 additional days.[1] For the six patients, collectively, Maimonides billed First United $19,075,525.90 and received only $4,078,663.29. Plaintiff alleges that each of the six patients “entered into a binding, valid, and enforceable contract” with defendant and that each assigned his or her benefits to Maimonides. Plaintiff claims that it has provided services for which it has not received full payment and asserts six causes of action for breach of contract against defendant, one for each of the six patients. Defendant does not challenge these causes of action in the instant motion.
Plaintiff also alleges six separate causes of action for violation of the Prompt Pay Law, which provides that where an insurer is clearly liable to pay a health care claim, the health care provider or patient must be paid within 30 days of receipt of an electronically transmitted claim, or within 45 days of receipt of a claim transmitted by any other means (Insurance Law § 3224-a [a]). Where liability for the claim is not reasonably clear, the insurer must pay any undisputed portion and, within 30 days of receipt of the claim, provide either written notification specifying the reasons why it is not liable or a written request for any additional information necessary to determine its liability (Insurance Law § 3224-a [b]). An insurer that fails to abide by these standards “shall be obligated to pay to the health care provider or person submitting the claim” the full amount of the claim plus interest at the statutorily authorized rate (Insurance Law § 3224-a [c] [1]). The Prompt Pay Law authorizes the Superin *525 tendent of Insurance (now called the Superintendent of Financial Services) to investigate violations and assess civil penalties, both on his own accord and upon complaint from an individual health care provider or policyholder (Insurance Law § 3224-a [c] [2]). Whether the individual claimant patient or provider has a right to bring suit to recover the funds alleged to be due, together with the statutorily imposed interest, is the issue before the court.
Plaintiff alleges that defendant failed to pay its claims in full and did not provide written notification citing the specific reasons why it claims not to be obligated to pay the full value of the claim, nor did it send a written request for information to determine its liability. Because more than 45 days have elapsed since defendant received each unpaid or partially unpaid bill, plaintiff contends that it is entitled to the full value of its services plus statutory interest. With regard to these six causes of action, defendant’s sole contention is that there is no private right of action under the Prompt Pay Law. It argues that the court should therefore dismiss plaintiffs second, fourth, sixth, eighth, tenth, and twelfth causes of action, which all seek relief under the statute.
Finally, for its thirteenth cause of action, plaintiff asserts one claim of unjust enrichment, seeking full payment for the services it provided to all six patients plus interest. Plaintiff alleges that it had a reasonable expectation that it would receive full payment from defendant for its services, that defendant has failed to provide full payment, and that defendant is thus unjustly enriched, at plaintiff’s expense, in the amount of $14,996,862.61 plus interest. Defendant argues that, because the parties are connected only through the alleged contracts and assignments, this equitable cause of action is duplicative of plaintiffs breach of contract claims. Defendant further contends that if there were no contracts governing the transactions, the relationship between plaintiff and defendant would be “too attenuated” to sustain a cause of action for unjust enrichment.
Discussion
Defendant moves, pursuant to CPLR 3211 (a) (7), to dismiss plaintiffs causes of action for violation of Insurance Law § 3224-a. Under CPLR 3211 (a) (7), a “party may move for judgment dismissing one or more causes of action asserted against him” because “the pleading fails to state a cause of action.” In ruling on a CPLR 3211 (a) (7) motion, “the court must afford the *526 pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Breytman v Olinville Realty, LLC, 54 AD3d 703, 703-704 [2d Dept 2008]; see Leon v Martinez, 84 NY2d 83, 87 [1994]). If, as defendant contends, Insurance Law § 3224-a does not contain an express private right of action, then, to discern whether plaintiff has properly stated its second, fourth, sixth, eighth, tenth, and twelfth causes of action, the relevant question is whether a private right of action “may fairly be implied” (Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]). In any event, “[a]bsent explicit legislative direction . . . it is for the courts to determine . . . what the Legislature intended” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983]).
The essential factors to consider in determining whether a statute has an implied private right of action are “(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme” (Sheehy, 73 NY2d at 633). In the instant case, plaintiff clearly satisfies the first two prongs of the Sheehy test, and defendant does not appear to argue otherwise.
The Prompt Pay Law was enacted to protect health care providers and patients against insurance companies that fail to pay claims in a timely fashion (Governor’s Approval Mem, Bill Jacket, L 1997, ch 637, at 6). Senator Holland, who sponsored the original bill, noted that the unnecessary withholding of reimbursement to health care providers who have already rendered services “hinders [their] ability to manage [their] own accounts and balance [their] books” (Sponsor’s Mem, Bill Jacket, L 1997, ch 637, at 7). Maimonides, a health care provider that has already rendered services to the six patients over the past several years, is thus a member of the class that the Legislature intended to benefit by passing the Prompt Pay Law. Further, the express legislative purpose is to prevent delay in the payment of health care claims (see id.). Allowing individual providers to seek the full amount of their health care claims plus upwards of 12% interest directly through the courts, and not just administratively through application to the Superintendent, clearly advances the prompt payment of compensation and deters unwarranted delay and thus promotes the legislative purpose.
*527 Defendant urges that plaintiff does not, however, satisfy the third prong of the Sheehy test, which the Court of Appeals has deemed “the most critical inquiry in determining whether to recognize a private cause of action” (Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 212 [1990]). Defendant claims that the substantial authority conferred upon the Superintendent, such as investigatory powers and the ability to levy fines, is evidence that the Legislature contemplated purely administrative enforcement. Therefore, defendant asserts, a private right of action would be inherently inconsistent with the legislative scheme. Defendant relies upon Group Health Inc. v Kofinas, in which the Supreme Court, New York County, held, on such grounds, that there is no implied private right of action for violation of the Prompt Pay Law (2008 NY Slip Op 32251[U], *6 [2008]).[2] That decision was not appealed and there is no authority directly on point that is binding on this court.[3] For the reasons set forth below, the court declines to follow Kofinas and holds that there is a private right of action under Insurance Law § 3224-a.
A close reading of Insurance Law § 3224-a reveals the legislative intent, expressed therein, to afford a private right of action to patients and providers, like plaintiff, which are the intended beneficiaries of the statute. In subsections (a) and (b), the statute defines the duty owed to the claimant to make payment to the claimant within a specified period of time or to inform the claimant in writing of the reason the insurer disputes the claim, also within a specified period of time. Critically, subsection (c) (1) provides, as is relevant here:
“In addition to the penalties provided in this chapter, any insurer or organization or corporation that fails to adhere to the standards contained in this section shall be obligated to pay to the health *528 care provider or person submitting the claim, in full settlement of the claim or bill for health care services, the amount of the claim or health care payment plus interest on the amount of such claim or health care payment of the greater of the rate equal to the rate set by the commissioner of taxation and finance for corporate taxes pursuant to paragraph one of subsection (e) of section one thousand ninety-six of the tax law or twelve percent per annum, to be computed from the date the claim or health care payment was required to be made” (emphasis added).
Subsection (c) (2), which provides for a determination of violation by the Superintendent following his or her own investigation, and imposition of penalties (as provided in Insurance Law § 109), but limits the imposition of civil penalties where the Superintendent finds that the delinquent insurer has timely paid at least 98% of the claims submitted in a calendar year, expressly provides that “nothing in this paragraph shall limit, preclude or exempt an insurer or organization or corporation from payment of a claim and payment of interest pursuant to this section.” From this unequivocal statutory language, this court deduces an express legislative intent to confer a private right of action upon the intended beneficiary patients and their providers to seek payment directly from an insurer. As the Court of Appeals noted in Matter of Polan v State of N.Y. Ins. Dept. (3 NY3d 54, 58 [2004]), the best evidence of the Legislature’s intent is the text of the statute, which is generally dispositive.
Moreover, addressing the alternative arguments raised herein, that no private right of action can be implied, as held in Kofinas, in dismissing the defendant’s Prompt Pay Law counterclaim, the Kofinas court relied on the holding in Matter of Carrube v New York City Tr. Auth. (291 AD2d 558, 558 [2d Dept 2002]), that “[w]ith regard to the third prong of the [Sheehy] test, if a provision or body of law has a potent official enforcement mechanism, the Legislature contemplated administrative enforcement and there is no private right of action” (see 2008 NY Slip Op 32251[U] at *6-7). However, four months after the Supreme Court rendered the Kofinas decision, the Second Department explicitly overturned Carrube, noting that “a private right of action ‘may at times further a legislative goal and coalesce smoothly with the existing statutory scheme’ ” (AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6, 15-16 [2d Dept 2008], quoting Uhr v East Greenbush Cent. School *529 Dist., 94 NY2d 32, 40 [1999]). The court stated, “[t]o the extent Matter of Carrube v New York City Tr. Auth. holds that there is no private cause of action under a statute whenever the body of law has a potent official enforcement mechanism, we decline to follow it, and it should not be followed in the future” (58 AD3d at 17 [citation omitted]). The reasoning in Kofinas is therefore not consistent with present authority in the Second Department.
For the purpose of determining whether a private right of action is consistent with the legislative scheme, the Second Department has distinguished between statutes that are “simply remedial in nature” and those that “afford . . . rights” to individuals and “impose an affirmative duty” to perform with respect to such rights (Henry v Isaac, 214 AD2d 188, 193 [2d Dept 1995]). While the former, like the Martin Act (General Business Law art 23-A), “create an enforcement mechanism” that is aimed toward protecting the general public, the latter, like the Social Services Law at issue in Henry, confer benefits that “inure directly and personally” to individuals (id.). For statutes that create rights to the individual, a private right of action to seek redress for injury is “not inconsistent with the legislative scheme,” but would actually “augment the existing enforcement devices and enhance a legislative scheme which . . . imposes affirmative duties for the protection of those very individuals” (id.).[4] The court noted that this is especially true where the administrative remedies “do not adequately address the harm that a particular individual may suffer” (id.).
Although defendant argues that the Prompt Pay Law is predominantly a remedial statute, it clearly creates rights for health care providers and patients and affirmative duties for insurers. Before the statute was passed, the only requirements for timely payment of health care claims were contractual (see Budget Report on Bills, Bill Jacket, L 1997, ch 637, at 10). When enacted, the Prompt Pay Law granted all providers and patients the right to payment (or written notification of disputed claims), and imposed on insurers a duty to pay, within 30 to 45 days. *530 While the statute empowered the Superintendent to investigate and impose fines upon delinquent health insurers, the primary purpose of the legislation was “to amend the insurance law, in relation to the settlement of claims for health care and payments for health care services” (L 1997, ch 637), thus providing a statutory right to the individual patient or provider.[5] Therefore, a private right of action would promote the legislative purpose of the Prompt Pay Law and would be consistent with the legislative scheme.[6] Plaintiff, as a health care provider, may thus bring a private direct suit against the delinquent insurer for violation of Insurance Law § 3224-a.[7]
*531 Defendant further advances that the court can not read a private right of action into the Prompt Pay Law because both the Senate and the Assembly have considered, and not yet passed, bills that would explicitly add a private right of action. In fact, the sponsors of those bills stated, in their supporting memoranda, that “[h]ealth care providers are prohibited from a private right of action, so there is no mechanism to compel insurance companies to pay legitimate claims” (Sponsor’s Mem, 2011 NY Senate Bill S4644; Sponsor’s Mem, 2007 NY Assembly Bill A4324). However, these bills were introduced more than a decade after the passage of the Prompt Pay Law, and the sponsors’ memoranda merely state the legal conclusions of Senator Hannon and Assemblyman Magnarelli, not the intent of the Legislature that passed the original statute in 1997. [8] While these opinions are certainly relevant to the court’s inquiry, they are in no way dispositive. [9] As noted in Henry, “[w]here . . . there is no express legislative authorization, whether the violation of a statute gives rise to an independent private cause of action is a matter for the courts” (214 AD2d at 191, citing Burns Jackson, 59 NY2d at 325). In any case, the current sponsors’ memoranda add support to the court’s finding that an implied private right of action would serve to enhance the legislative scheme, as both Senator Hannon and Assemblyman Magnarelli state that the public enforcement mechanism is insufficient to *532 address the problems that the Legislature intended to remedy and that a private right of action would “give greater enforcement power to the Prompt Pay Law” (Sponsor’s Mem, 2011 NY Senate Bill S4644; Sponsor’s Mem, 2007 NY Assembly Bill A4324).[10] Clearly, a private right of action both furthers the legislative purpose and harmonizes with the legislative scheme (see Henry, 214 AD2d at 193).
Plaintiff alleges, for each patient, that defendant failed to pay plaintiff’s claims in full, that defendant did not provide any written notice as to the reason it was not liable or any written request for further information, and that more than 45 days have elapsed since defendant received all of plaintiffs claims. This court finds such allegations sufficient to support a claim for violation of Insurance Law § 3224-a and denies defendant’s motion to dismiss the second, fourth, six, eighth, tenth, and twelfth causes of action.
Defendant also moves, pursuant to CPLR 3211 (a) (1) and (7), to dismiss plaintiffs thirteenth cause of action, for unjust enrichment. CPLR 3211 (a) (1) enables a party to move to dismiss a cause of action based upon documentary evidence. The court may dismiss a cause of action under CPLR 3211 (a) (1) “only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (Leon, 84 NY2d at 88). Here, defendant produced copies of the Medigap insurance contracts between First United and the six patients that plaintiff treated. While a party may plead “alternatively or hypothetically,” and state several causes of action “regardless of consistency” (CPLR 3014), “the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter” (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 23-24 [2005]; see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]). A plaintiff may state alternative causes of action for breach of contract and unjust enrichment that are predicated on the same facts only “where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue” (Joseph Sternberg, Inc. v Walber 36th St. Assoc., 187 AD2d 225, 228 [1st Dept 1993]).
*533 Here, plaintiff alleges that there were valid contracts between the patients and First United, that there was a valid assignment of benefits under each contract to Maimonides, and that the contracts governed the transactions alleged in the complaint. As defendant contends, without a valid, enforceable contract between defendant and plaintiffs assignors, plaintiff has demonstrated no basis for recovery against defendant. Accordingly, because plaintiff relies upon the breach of the six contracts, and pleads no alternative basis for its claim that defendant has been unjustly enriched at its expense, plaintiffs thirteenth cause of action must be dismissed.
Conclusion
First United’s motion is granted only to the extent that plaintiffs thirteenth cause of action, for unjust enrichment, is dismissed. As this court holds that there is an express legislative intent to provide a private right of action for violation of Insurance Law § 3224-a, defendant’s motion is denied with respect to plaintiff’s second, fourth, sixth, eighth, tenth, and twelfth causes of action.
Defendant shall serve and file its answer within 20 days of service upon it of a copy of this decision and order.

. Medigap policies cover the cost of health care in excess of Medicare coverage, including, but not limited to, copayments, coinsurance, deductibles, and the cost of hospital stays in excess of 60 days and beyond the patient’s lifetime Medicare reserve of 90 additional days.

. In Kofinas, the court also asserted that the defendant did not satisfy the second prong of the Sheehy test (2008 NY Slip Op 32251RJ] at *5). In the instant case, however, defendant does not challenge plaintiffs claim that a private right of action would promote the legislative purpose.

. However, in Medical Socy. of State of N.Y. v Oxford Health Plans, Inc. (15 AD3d 206, 206 [1st Dept 2005]), the Court found that the plaintiff medical association did not have standing to assert a private right of action under Insurance Law § 3224-a because it was not a provider for whose benefit the statute was enacted, noting “[i]t would be particularly incongruous to allow plaintiff to sue when its members, assuming they have private rights of action, have to arbitrate their claims against defendants” (emphasis added). The implication is that, even in the First Department, an insured would have standing to bring a private suit based on Insurance Law § 3224-a.

. The Henry Court deemed the Martin Act to be a prototypically remedial statute that, accordingly, affords no private right of action (214 AD2d at 193, citing CPC Intl. v McKesson Corp., 70 NY2d 268, 276-277 [1987]). However, the Court of Appeals recently ruled that even the Martin Act does not preempt common-law tort claims in the securities context, thereby recognizing that analogous private actions may not be inconsistent with a legislative scheme authorizing administrative enforcement (see Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc., 18 NY3d 341 [2011]).

. The court also notes that the title of the Prompt Pay Law is “Standards for prompt, fair and equitable settlement of claims for health care and payments for health care services” (Insurance Law § 3224-a [emphasis added]). This title implies that the statute creates substantive legal requirements and not simply a public enforcement framework. The suggestion of Senator Han-non and Assemblyman Magnarelli, in the sponsors’ memoranda, that the statute permits the Superintendent only to levy fines, but not to seek payments and interest directly on behalf of providers and patients (see Sponsor’s Mem, 2011 NY Senate Bill S4644; Sponsor’s Mem, 2007 NY Assembly Bill A4324), not only supports the conclusion that the administrative remedies that the Prompt Pay Law established are insufficient to address the problem that the Legislature intended to correct, but also supports the conclusion that the sole mechanism to enforce the remedy provided in Insurance Law § 3224-a is a private right of action by the claimant.

. Plaintiff also correctly notes that the determination of whether an insurer has violated the Prompt Pay Law is simple and clear-cut and thus would not likely interfere with a public enforcement scheme. Compare Burns Jackson (59 NY2d at 329-330), in which the Court of Appeals found that permitting a private right of action for damages under the Taylor Law would “impose a crushing burden” upon the striking employees and would be inconsistent with the purpose of the law to defuse tensions between public employers and employees, and Carrier v Salvation Army (88 NY2d 298, 302-304 [1996]), in which the Court of Appeals held, based upon the “extensive regulatory scheme,” which gave “comprehensive responsibility” to the Department of Social Services to supervise residential care facilities, including specified equitable enforcement remedies, that the Department’s discretion to appoint a receiver did not create a private right to such relief, which would be inconsistent with the statutory enforcement scheme, particularly in light of an express authorization for residents to bring a private action for breach of the statutory warranty of habitability.

. Although defendant argues that courts have consistently found that other sections of the Insurance Law do not afford a private right of action, the cited cases all involve provisions that either call for general oversight of the insurance industry (see Matter of Polan, 3 NY3d at 57 [CPLR article 78 challenge to the Superintendent’s interpretation of Insurance Law § 4224 (b) (2), prohibiting unfair discrimination in life, accident, and health insurance]; Klinger v Allstate Ins. Co., 268 AD2d 562, 562 [2d Dept 2000] [Insurance Law § 2601 (a), prohibiting unfair settlement practices that are “performed with such frequency as to indicate a general business practice”]; Bauer v Mellon *531 Mtge. Co., 178 Misc 2d 234, 238 [Sup Ct, NY County 1998] [Insurance Law § 6503 (d), limiting the requirement that mortgagors pay for mortgage guaranty insurance]; Dwyer v First Unum Life Ins. Co., 14 Misc 3d 1202[A], 2006 NY Slip Op 52380[U], *4 [2006] [Insurance Law § 409, requiring insurers to establish a plan for fraud prevention enforceable by the Superintendent]) or devise an administrative remedy (see Klinger, 268 AD2d at 562 [Insurance Law § 3411 (n), authorizing the Superintendent to impose fines for violations of the section regulating automobile collision insurance]; Huskission v Sentry Ins., 123 AD2d 832, 833 [2d Dept 1986] [Insurance Law § 3430, creating an administrative procedure for filing grievances with the Superintendent for discrimination based upon geographic location]), rather than grant clear rights to individuals, as does Insurance Law § 3224-a.

. In Majewski v Broadalbin-Perth Cent. School Dist. (91 NY2d 577, 585-586 [1998]), the Court of Appeals held that even conclusive statements of legislative intent made by individual legislators during floor debates and in written reports “may be accorded some weight in the absence of more definitive manifestations of legislative purpose” but “must be cautiously used” (internal quotations marks omitted and emphasis added).

. In Kofinas, in response to the defendant’s argument that a bill before the Assembly supported his contention that there is an implied private right of action under the Prompt Pay Law, the court concluded that “pending legislation certainly does not reflect any will or intent by state lawmakers and is not binding on this Court whatsoever” (2008 NY Slip Op 32251[U] at *6).

. This court does not agree that the current enforcement mechanism is limited to administrative action, having determined that the statute expressly contemplates private litigation to enforce its purpose.