OPINION OF THE COURT
Austin, J.
Insurance Law § 3224-a, known as the Prompt Pay Law, imposes standards upon insurers for the “prompt, fair and equitable” payment of claims for health care services. The statute sets forth time frames within which an insurer must either pay a claim, notify the claimant of the reason for denying a claim, or request additional information. An insurer that fails to comply with the provisions of the Prompt Pay Law is obligated to pay the full amount of the claim, with interest. In this case of first impression for this Court, we are asked to determine whether the Prompt Pay Law affords claimants a private right of action to recover payment for health care services based on a violation of the statute, or whether enforcement of the statute is vested solely with the New York State Insurance Department. For the reasons that follow, we hold that the Prompt Pay Law affords an implied private right of action, and that the plaintiff *209 health care provider may thus assert claims against the defendant insurer for its alleged violation of the statute.
The plaintiff, Maimonides Medical Center (hereinafter Maimonides), a not-for-profit hospital in Brooklyn, furnished services to six patients who had supplemental Medicare insurance coverage policies, known as “Medigap” policies, with the defendant, First United American Life Insurance Company (hereinafter First United), from 2007 through 2011. The six patients assigned their benefits under their respective First United policies to Maimonides. Maimonides billed First United more than $19 million for services rendered to these six patients. In response, First United paid Maimonides slightly more than $4 million.
Maimonides commenced this action against First United to recover the balance owed for its care of the six patients on theories of breach of contract, violation of the Prompt Pay Law, and unjust enrichment. The complaint detailed the service dates and the amount of the bills issued by Maimonides to First United for each of the patients, and alleged that, despite repeated demands for payment in full, First United failed to pay the balance owed. Maimonides also alleged that First United never provided written notice, as required by the Prompt Pay Law, that it was not obligated to pay in full the amounts billed by Maimonides for services furnished to the six patients.
The Prompt Pay Law requires an insurer to pay undisputed claims within 30 days after receipt of an electronic submission or within 45 days after receipt by other means (see Insurance Law § 3224-a [a]). If a claim is disputed, the insurer is obligated to pay the undisputed portion of the claim, if there is any, and, within 30 days of receipt of the claim, notify the policyholder, covered person, or health care provider in writing of the specific reason that the insurer is not liable to pay the claim (see Insurance Law § 3224-a [b] [1]). In the alternative, the insurer may request additional information necessary to determine its potential liability with respect to payment of the claim (see Insurance Law § 3224-a [b] [2]). First United allegedly did neither. An insurer that fails to comply with the provisions of the Prompt Pay Law is obligated to pay the health care provider or the person submitting the claim the full amount of the claim, plus 12% interest per annum, to be computed from the date the claim was required to be paid (see Insurance Law § 3224-a [c] [1]). In its second, fourth, sixth, eighth, tenth, and twelfth causes of action, which alleged violation of the Prompt Pay Law, *210 Maimonides sought the outstanding balance due under the claims submitted on behalf of the six subject patients, plus 12% interest per annum.
Prior to answering the complaint, First United moved, inter alla, pursuant to CPLR 3211 (a) (7) to dismiss the six causes of action which alleged violation of the Prompt Pay Law. In support of its motion, First United argued that these claims failed to state a cause of action because, under the Prompt Pay Law, there is no private right of action — express or implied. It contended that the enforcement of the Prompt Pay Law is vested solely in the New York State Superintendent of Insurance (hereinafter the Superintendent), who is obligated to determine violations arising from either his or her own investigation or complaints from health care providers or policyholders. First United maintained that recognition of an implied private right of action based on the Prompt Pay Law would be inconsistent with the legislative scheme, as well as most insurance statutes, which are part of a regulatory framework that provides for administrative remedies for statutory violations. First United contended that the Prompt Pay Law only provided for the Superintendent to impose penalties for violations, including an award of 12% interest per annum.
In opposition, Maimonides contended that it had an implied right of action under the Prompt Pay Law. It maintained that this was so since (a) the Prompt Pay Law was enacted to protect health care providers such as itself, (b) the recognition of a private right of action furthered the legislative purpose of the Prompt Pay Law by assuring that claims were promptly paid by insurers, and (c) a private right of action was consistent with the legislative scheme.
In reply, First United argued that public and private avenues of enforcement are not in harmony since the enactment of the Prompt Pay Law was part of a comprehensive legislative scheme to regulate the insurance industry. It contended that the power to enforce the relevant statutes and regulations resided solely with the New York State Department of Insurance (hereinafter the Insurance Department), which is now part of the New York State Department of Financial Services (hereinafter the Financial Services Department).
The Supreme Court denied those branches of First United’s motion which were to dismiss the six causes of action which alleged violation of the Prompt Pay Law, concluding that a close reading of the statute revealed “an express legislative intent to *211 confer a private right of action upon the intended beneficiary patients and their providers to seek payment directly from an insurer” (Maimonides Med. Ctr. v First United Am. Life Ins. Co., 35 Misc 3d 570, 576 [2012]). First United appeals from so much of the order as denied those branches of its motion which were to dismiss the Prompt Pay Law causes of action. Although we disagree with the Supreme Court’s conclusion that the Prompt Pay Law expressly provides a private right of action, we find that such a right is implied under the statute. We thus affirm the order of the Supreme Court insofar as appealed from.
The analysis of whether the six claims predicated upon the alleged violation of the Prompt Pay Law state viable causes of action depends upon whether the Prompt Pay Law provides Maimonides with a private right of action.
Where a statute does not expressly confer a private cause of action upon those it is intended to benefit, a private party may seek relief under the statute “only if a legislative intent to create such a right of action is ‘fairly implied’ in the statutory provisions and their legislative history” (Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 211 [1990], citing Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; see Carrier v Salvation Army, 88 NY2d 298, 302 [1996]; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983]). This inquiry involves three factors: “ ‘(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme’ ” (Carrier v Salvation Army, 88 NY2d at 302, quoting Sheehy v Big Flats Community Day, 73 NY2d at 633; see Cruz v TD Bank, N.A., 22 NY3d 61, 70 [2013]).
Only the third factor, which is generally the “most critical” (Carrier v Salvation Army, 88 NY2d at 302 [internal quotation marks omitted]; Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d at 212), is disputed here.
First United contends that the third factor has not been satisfied because private enforcement of the statute would be inconsistent with the legislative scheme, which delegates enforcement to the Superintendent. The amicus health plan organization agrees. This contention is not persuasive. We conclude that a private right of action, in addition to administrative enforcement, is fully consistent with the legislative scheme, and that a private right of action is to be implied.
*212 “Analysis begins, of course, with the statute itself’ (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d at 325). The Prompt Pay Law was enacted in 1997 (see L 1997, ch 637, §3). It is entitled “Standards for prompt, fair and equitable settlement of claims for health care and payments for health care services.” It provides that, in the processing of health care claims and bills for services rendered by providers, health insurers “shall adhere to” stated standards (Insurance Law § 3224-a).
Setting forth these standards, Insurance Law § 3224-a (a) provides that, except in a case where the obligation of an insurer to pay a claim is not reasonably clear, or when there is a reasonable basis on which to conclude that such claim was submitted fraudulently, the insurer “shall pay the claim to a policyholder or covered person or make a payment to a health care provider” within 30 days after receipt of an electronically transmitted claim or bill or 45 days after receipt of such by other means (Insurance Law § 3224-a [a] [emphasis added]).
Insurance Law § 3224-a (b) provides that, in a case where the insurer’s obligation to pay is not reasonably clear due to a good faith dispute regarding coverage eligibility, the liability of another insurer, the amount of the claim, the benefits covered, or the manner in which the services were provided, an insurer shall pay any undisputed portion of the claim and notify the policyholder, covered person, or health care provider in writing within 30 days after receipt of the claim (1) that it is not obligated to pay the claim, stating the specific reasons why it is not so obligated, or (2) that it is requesting additional information needed to determine whether it is so obligated. Upon receipt of such requested information, or an internal appeal of a denied claim, the insurer shall comply with subsection (a) (see Insurance Law § 3224-a [b] [1], [2]).
With respect to enforcement and penalties, subsection (c) of Insurance Law § 3224-a states:
“(1) Except as provided in paragraph two of this subsection, each claim or bill for health care services processed in violation of this section shall constitute a separate violation. In addition to the penalties provided in this chapter, any insurer . . . that fails to adhere to the standards contained in this section shall be obligated to pay to the health care provider or person submitting the claim, in full settlement of the claim or bill for health care ser *213 vices, the amount of the claim or health care payment plus interest on the amount of such claim or health care payment of the greater of the rate equal to the rate set by the commissioner of taxation and finance for corporate taxes pursuant to paragraph one of subsection (e) of section one thousand ninety-six of the tax law or twelve percent per annum, to be computed from the date the claim or health care payment was required to be made. When the amount of interest due on such a claim is less then [sic] two dollars, and [sic] insurer or organization or corporation shall not be required to pay interest on such claim.
“(2) Where a violation of this section is determined by the superintendent as a result of the superintendent’s own investigation, examination, audit or inquiry, an insurer . . . shall not be subject to a civil penalty prescribed in paragraph one of this subsection, if the superintendent determines that the insurer or organization or corporation has otherwise processed at least ninety-eight percent of the claims submitted in a calendar year in compliance with this section; provided, however, nothing in this paragraph shall limit, preclude or exempt an insurer . . . from payment of a claim and payment of interest pursuant to this section. This paragraph shall not apply to violations of this section determined by the superintendent resulting from individual complaints submitted to the superintendent by health care providers or policyholders” (Insurance Law § 3224-a [c] [1], [2] [emphasis added]).
Subsection (d) of Insurance Law § 3224-a defines the terms “policyholder” and “health care provider” (see Insurance Law § 3224-a [d] [1], [2]). Subsection (e) of section 3224-a states that section 3224-a does not impair any right available to the State to adjust the timing of its medical assistance payments.
Subsection (f) of Insurance Law § 3224-a provides, in part, that “[i]n any action brought by the superintendent pursuant to this section ... it shall be a mitigating factor that the insurer . . . is owed any premium amounts . . . from the state.” Subsection (g) of Insurance Law § 3224-a provides a time period for the submission of claims to an insurer. Subsection (h) of section 3224-a concerns reconsideration of untimely submitted claims (see Insurance Law § 3224-a [h] [1], [2]).
*214 Section 2 of the legislation creating the Prompt Pay Law added the violation of the above provisions to the definition of a ££[d]efined violation” (Insurance Law § 2402 [b]; see L 1997, ch 637, § 2). It thereby incorporated the powers of the Superintendent into the enforcement provisions related to defined violations. As with all other defined violations, the Superintendent is empowered to examine and investigate to determine whether the insurer violated or is violating the law (see Insurance Law § 2404).
A related bill, enacted on the same day as the Prompt Pay Law, imposed penalties for failure to respond to an inquiry by the Superintendent, and applies to enforcement of all insurance laws (see Insurance Law § 2404, amended by L 1997, ch 666, § 3). The related bill also amended Insurance Law § 2406 to provide that, if the Superintendent finds, after notice and a hearing, that an insurer has violated the Prompt Pay Law, the Superintendent is authorized to levy a civil penalty of up to $500 per day for each day beyond the date that a claim was to be processed, not to exceed $5,000 (see Insurance Law § 2406 [a]).
The Supreme Court relied upon the portion of Insurance Law § 3224-a (c) (1) quoted above in determining that the legislature expressly contemplated private causes of action. That subsection provides that the insurer “shall be obligated” to pay the health care provider or patient, in full settlement of the claim, the amount of the claim plus interest (Insurance Law § 3224-a [c] [1]). Contrary to the Supreme Court’s determination, this language does not expressly provide for a private right of action. However, it does impose specific duties upon insurers and create rights in patients and health care providers, and thus militates in favor of the recognition of an implied private right of action to enforce such rights.
Support for the conclusion that the Prompt Pay Law affords an implied private right of action to patients and health care providers is provided by this Court’s decision in Henry v Isaac (214 AD2d 188 [1995]). In Henry, we considered whether an adult-care facility resident had a private cause of action against the facility under Social Services Law article 7 for failure to provide the services and level of care mandated by the statute and its implementing regulations. This Court found an implied right of action under the statute. We noted that the Department of Social Services was given broad enforcement powers to ensure compliance with the requirements, including the authority to *215 conduct investigations, assess civil penalties, revoke or suspend operating certificates, and call upon the Attorney General to seek equitable relief (see id. at 192). However, the statute did more than create an enforcement mechanism (see id.). It afforded residents of such facilities certain rights and the entitlement to certain services (see id.).
This Court determined that a private right of action to enforce the rights provided by Social Services Law article 7 would be consistent with the legislative scheme. The statute and its implementing regulations were “not simply remedial in nature, but afford the residents various rights and impose an affirm a - tive duty on the operators of adult care facilities to provide specified services and care” (id. at 193). This Court noted that the law was directed toward protecting the health and well-being of a particular class of individuals, and was not primarily designed to provide a mechanism for preventing harm to the public in general (see id.). Benefits flowing from the facilities’ obligations inured directly and personally to the individual residents, who had private, contractual relationships with the facilities and, thus, any violations committed by the facilities directly and adversely affected those individuals (see id.). The remedies available to the Department of Social Services did not adequately address the harm that a particular individual might suffer (see id.). Thus, recognition of a private right of action “would augment the existing enforcement devices and enhance a legislative scheme which, in part, imposes affirmative duties for the protection of those very individuals” (id.; see Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 40 [1999] [“A private right of action may at times further a legislative goal and coalesce smoothly with the existing statutory scheme”]; Goldman v Simon Prop. Group, Inc., 58 AD3d 208, 216 [2008]; Doe v Roe, 190 AD2d 463, 471 [1993]).
Similarly, the Prompt Pay Law is not simply remedial in nature, but affords health care providers and patients certain rights, and imposes an affirmative duty upon insurers to timely pay or dispute claims. In the event of a violation, health care providers and patients are given the right to full payment of the claim plus interest, and insurers are obligated to make such payment.
A review of the legislative history of the Prompt Pay Law reflects that the law was directed toward the protection of health care providers and patients from late payment of claims, and was not primarily designed to provide a mechanism for *216 preventing harm to the public in general. The Senate sponsor’s memorandum recognized that “[w]hen third party payers withhold reimbursements from health care providers who have already rendered their services, it hinders the providers!”] ability to manage its own accounts and balance its books” (Sponsor’s Mem, Bill Jacket, L 1997, ch 637 at 8). Comments submitted by the Insurance Department noted that the bill “will provide protection to both patients and health care providers” relative to timely payment of claims (Mem of Ins Dept, Bill Jacket, L 1997, ch 637 at 16). Even the title of the statute itself reflects that the focus is on “settlement” of specific claims. In signing the legislation into law, the Governor, in his memorandum, noted that the intention of the Prompt Pay Law was to “provide protection to both patients and health care providers in connection with the timely payment of claims by insurers and health maintenance organizations” (Governor’s Approval Mem, Bill Jacket, L 1997, ch 637 at 6).
Benefits flowing from the insurers’ obligations inure directly and personally to the individual health care providers and patients submitting claims and bills, who have private contractual relationships with the insurers. A violation obligates the insurer to pay the full amount of the claim, plus 12% interest per annum in settlement of the claim. Thus, a health care provider or patient not receiving timely payment or notice of a disputed claim has a statutory right to payment of the full amount, regardless of whether a breach of contract cause of action would be otherwise successful.
Violations directly affect the health care providers and patients who do not receive timely payment or notice of a disputed claim. The remedies available to the Superintendent do not adequately address this individual harm. The amicus contends that health care providers can obtain complete relief upon a complaint to the Financial Services Department. However, the record does not support this contention. At oral argument before the Supreme Court, First United conceded that fines paid to the Superintendent are not distributed to health care providers.
Accordingly, the Prompt Pay Law contains all of the indications of the availability of an implied private right of action set forth in Henry v Isaac. The recognition of a private right of action on behalf of health care providers and patients here would likewise “augment the existing enforcement devices and enhance a legislative scheme which, in part, imposes affirmative *217 duties for the protection of those very individuals” (Henry v Isaac, 214 AD2d at 193; see Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; Goldman v Simon Prop. Group Inc., 58 AD3d at 216; Doe v Roe, 190 AD2d at 471).
Further legislative history supports this conclusion. In support of the bill, the Insurance Department stated: “The powers granted to the Superintendent of Insurance to investigate and enforce compliance with the prompt payment requirements established by these bills, as well as the interest and penalty sanctions established by the bills, will help assure that payments are made in a timely fashion” (Mem of Ins Dept, Bill Jacket, L 1997, ch 637 at 16). Enforcement of the right to recover interest at 12% per annum on the outstanding obligation, as well as the full payment due to a health care provider or patient, upon a finding of violation, is not solely vested in the Superintendent. This liability stands as a legal requirement imposed upon delinquent insurers. The position taken by the Insurance Department recognized that private enforcement of those obligations that are imposed upon the insurer helps promote the legislative purpose, separately and additionally to the enforcement powers of the Superintendent.
Moreover, the insurance industry, in urging a veto of the bill, recognized that private causes of action might be implied. A memorandum in opposition to the bill submitted by the Life Insurance Council of New York (hereinafter the Council), contrasted the proposed new statute to Insurance Law § 2601, which is aimed at the prevention of unfair settlement practices that are committed with such frequency as to indicate a “general business practice.” The Council noted that the proposed new statute did not employ the “general business practice” standard utilized by Insurance Law § 2601 to determine compliance, but instead treated a single late payment as a violation. The Council pointed out that because Insurance Law § 2601 applied to conduct amounting to a general business practice, courts had consistently denied litigants the right to utilize that section as a predicate for individual and class action lawsuits. The Council then expressed concern that “[b]y not using the ‘general business practice’ standard, section 3224-a does not provide the same protection and would inevitably promote excessive litigation” (Mem of Life Ins Council of NY, Bill Jacket, L 1997, ch 637 at 25).
The Council’s comments are instructive. The Council recognized that the statute made each failure to comply with the *218 Prompt Pay Law a separate violation, each with its own consequences obligating a full payment of benefits and the payment of interest. By contrast, Insurance Law § 2601 provides that no insurer shall engage in unfair settlement practices. Insurance Law § 2601 then provides that any enumerated act set forth in a list of acts, “if committed without just cause and performed with such frequency as to indicate a general business practice, shall constitute unfair claim settlement practices” (Insurance Law § 2601 [a]). Thus, Insurance Law § 2601 concerns general business practices, and is enforceable only by the Superintendent (see Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603, 614 [1994]).
A private right of action to enforce a health care provider’s or a patient’s specific right to full payment and interest created by the Prompt Pay Law, however, would be fully consistent with the Superintendent’s powers to enforce the statute. It is noteworthy that, pursuant to Insurance Law § 3224-a (c) (2), in investigations commenced by the Superintendent, no penalties are assessed if 98% of the claims were timely paid or disputed (see Insurance Law § 3224-a [c] [2]). That subsection provides that “nothing in this paragraph shall limit, preclude or exempt an insurer . . . from payment of a claim and payment of interest pursuant to this section.” Thus, even where the Superintendent determines that violations are not the general business practice of an insurer, the insurer is still obligated to pay the full amount of the claim plus 12% interest per annum.
For this reason, the Supreme Court properly rejected First United’s argument that the Prompt Pay Law is enforceable only by the Superintendent because other insurance laws do not imply causes of action. Where an insurance law is “intended as a general police regulation, and the violation made punishable solely as a public offense,” the recognition of a private cause of action would be improper (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d at 324 [internal quotation marks omitted]). However, the Prompt Pay Law creates specific rights in favor of individual health care providers and patients, the private enforcement of which would be fully consistent with the Superintendent’s enforcement powers (see Henry v Isaac, 214 AD2d at 193; see also Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; Goldman v Simon Prop. Group, 58 AD3d at 216; Doe v Roe, 190 AD2d at 471).
Contrary to the contention of amicus curiae, private enforcement would not put courts in the position of settling disputes *219 about the statutory provisions without necessary agency expertise. The Prompt Pay Law provides an easily determinable standard for violations — whether a claim was paid or disputed within a specified time (see Insurance Law § 3224-a [a]). Violations are subject to liquidated damages, composed of full payment of the claim plus interest (see Insurance Law § 3224-a [c] [1]). Thus, the determination of a violation and the calculation of resulting damages do not require any special agency expertise.
In urging this Court not to recognize a private right of action, First United relies upon Group Health, Inc. v Kofinas (2008 NY Slip Op 32251 [U] [Sup Ct, NY County 2008]). In that case, the Supreme Court determined that a health care provider could not maintain a private cause of action against an insurer for violation of the Prompt Pay Law. The Supreme Court held that the health care provider had not established the second and third prongs of the test that must be satisfied in order to imply a private right of action. It found that the health care provider failed to show that a private cause of action would promote the legislative purpose because the case law upon which the provider relied was inapposite.
As to the third prong of the analysis, the Supreme Court held that the health care provider failed to show consistency with the legislative scheme. It stated:
“The legislature intended that enforcement should be in the hands of the Superintendent of Insurance, and not in the hands of private litigants. Carrube v New York City Transit Authority, 291 AD2d 558 . . . (‘With regard to the third prong of the test, if a provision or body of law has a potent official enforcement mechanism, the Legislature contemplated administrative enforcement and there is no private right of action.’) Therefore, the fourth counterclaim must be dismissed” (Group Health, Inc. v Kofinas, 2008 NY Slip Op 32251[U], *6-7 [2008]).
As Maimonides correctly contends here, the rationale of Kofinas has been undermined by later case law. The Supreme Court in Kofinas relied upon a bright-line rule that recognition of a private right of action is not proper where there exists a potent official enforcement mechanism. However, the bright-line rule initially articulated in Carrube was subsequently rejected by this Court (see AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6, 17 [2008] [“To the extent (Carrube) holds that there is no private cause of action under a statute whenever the body of *220 law has a potent official enforcement mechanism, we decline to follow it, and it should not be followed in the future”]). This Court in AHA Sales also overruled the statement in Klinger v Allstate Ins. Co. (268 AD2d 562 [2000]), relied upon by amicus curiae, that where there is an administrative penalty, there is no private right of action unless expressly authorized by the statute. The Appellate Division, First Department, has likewise rejected such a bright-line rule, stating that it “is clear that potency is but one factor and thus, by itself, not determinative” (Rhodes v Herz, 84 AD3d 1, 11 n 3 [2011], overruling Goldberg v Enterprise Rent-A-Car Co., 14 AD3d 417 [2005]).
First United contends that this Court’s rejection of a bright-line rule does not undermine the reasoning of Kofinas because a potent enforcement mechanism remains a significant factor in the analysis. However, the Kofinas court did not undertake any such analysis, but merely relied upon the bright-line rule. As such, any persuasive authority which might have been found in Kofinas has been negated by the elimination of the bright-line rule.
Where the legislature provides for administrative enforcement of a statute, “[t]he question then becomes whether, in addition to administrative enforcement, an implied private right of action would be consistent with the legislative scheme” (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40).
Here, the Supreme Court properly determined that private enforcement of the specifically created right to full payment plus interest in settlement of an untimely paid or disputed claim, in addition to administrative enforcement of general practices, would be fully consistent with and enhance the legislative scheme. It should be noted that the United States District Court for the Eastern District of New York has also found an implied private right of action in the Prompt Pay Law, relying on the analysis set forth by the Supreme Court in the instant action (see Josephson v United Healthcare Corp., 2012 WL 4511365, *6-7, 2012 US Dist LEXIS 144830, *17-20 [ED NY, Sept. 28, 2012, No. ll-CV-3665 (JS) (ETB)]).
Finally, while First United pointed out in support of its motion that there have been unsuccessful legislative attempts to amend the Prompt Pay Law to create an express private right of action, this does not affect the analysis of whether a private right of action may be fairly implied. Bills that would have added a section expressly permitting private causes of action were introduced in the Assembly in 2007, 2009, and 2011, and in the *221 Senate in 2011, but were not enacted. However, unsuccessful attempts to codify an express private right of action do not establish that the legislature intended to prohibit private actions. “Where, as here, there is no express legislative authorization, whether the violation of a statute gives rise to an independent private cause of action is a matter for the courts” (Henry v Isaac, 214 AD2d at 191; see Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d at 325). The legislature was presumably aware of this precedent (see Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 373 [2007]; Arbegast v Board of Educ. of S. New Berlin Cent. School, 65 NY2d 161, 169 [1985]). Thus, “[i]t is even possible that neither [the Senate nor the Assembly] expected anything, except that the problem would cease to be the Legislature’s and become the courts’ ” (Tzolis v Wolff, 10 NY3d 100, 108 [2008]).
Therefore, Maimonides stated a cause of action alleging a violation of Insurance Law § 3224-a in its second, fourth, sixth, eighth, tenth, and twelfth causes of action, since a private right of action can be implied from the language of the Prompt Pay Law, as well as its legislative history. Accordingly, the order of the Supreme Court is affirmed insofar as appealed from.
Rivera, J.P, Dillon and Dickerson, JJ., concur.
Ordered that the order is affirmed insofar as appealed from, with costs.