Alain Kaloyeros, Plaintiff,

against
Fort Schuyler Management Corporation and FULLER ROAD MANAGEMENT CORPORATION, , Defendants.


755-17

APPEARANCES:
Harris, Conway & Donovan, PLLC
Attorneys for Plaintiff
(Ryan T. Donovan and Ryan E. Manley, of counsel)
The Patroon Building
Five Clinton Square
Albany, New York 12207
Steptoe & Johnson LLP
Attorneys for Plaintiff
(Michael C. Miller, Jeffrey A. Novack and David B. Hirsch, of counsel)
1114 Avenue of the Americas
New York, New York 10036
Hinman Straub, P.C.
Attorneys for Defendants
(James T. Potter, of counsel)
121 State Street
Albany, NY 12207


Richard M. Platkin, J.

Plaintiff Alain Kaloyeros commenced this action against defendants Fort Schuyler Management Corporation ("FSMC") and Fuller Road Management Corporation ("FRMC"), seeking indemnification of legal fees and expenses incurred in connection with two pending criminal prosecutions and a matter concerning plaintiff's public employment with the State University of New York ("SUNY"). Plaintiff moves pursuant to CPLR article 63 for a preliminary injunction requiring defendants to advance the legal fees and expenses associated [*2]with the three proceedings. Defendants oppose the motion.
BACKGROUND
Prior to the recent accusations of wrongdoing leveled against him, Dr. Kaloyeros had been hailed as a leader in the emerging field of nanotechnology. He ultimately rose to the rank of President and Chief Executive Officer of SUNY Polytechnic Institute ("SUNY Poly"). Dr. Kaloyeros also served as the Senior Vice President and Chief Executive Office of the College of Nanoscale Science and Engineering ("CNSE"), which was merged into SUNY Poly. In addition to his State employment, Dr. Kaloyeros was, at pertinent times, a director of both defendants, which are New York not-for-profit corporations affiliated with SUNY Poly and/or CNSE.
According to the complaint filed in this action ("Complaint"), the United States Attorney's Office for the Southern District of New York ("USAO") and the New York State Office of the Attorney General ("OAG") began investigating FSMC and FRMC in or around 2015. FSMC and FRMC retained counsel in connection with the investigations, and the same counsel initially represented Dr. Kaloyeros. 
After being advised by the USAO of a potential conflict of interest, defendants allegedly informed Dr. Kaloyeros that he should retain his own counsel and promised to advance his legal fees and expenses. Dr. Kaloyeros retained the firm of Steptoe & Johnson ("Steptoe") to represent him in connection with the criminal investigations. Consistent with their alleged oral representations, defendants made two advances to plaintiff, covering legal fees and expenses incurred through June 30, 2016.
On September 22, 2016, the USAO unsealed a criminal complaint ("USAO Complaint") that charged Dr. Kaloyeros with one count of conspiring to commit wire fraud. The charge is based on allegations that Dr. Kaloyeros conspired with real estate developers in Buffalo and Syracuse to defraud FSMC into awarding lucrative contracts to the developers (USAO Complaint, ¶ 67). Specifically, Dr. Kaloyeros is accused of causing FSMC to issue purportedly competitive requests-for-proposals ("RFPs") that secretly were tailored to the qualifications of preferred developers and designed to prevent competing bids — all while falsely representing to FSMC that the bidding process was fair, open and competitive (id., ¶ 68). On November 22, 2016, the USAO filed a wire fraud indictment against Dr. Kaloyeros, and he entered a plea of not guilty to the charge at his December 1, 2016 arraignment.
Also on September 22, 2016, the OAG filed a criminal complaint ("OAG Complaint") that accused Dr. Kaloyeros of three felony violations of New York's Donnelly Act (General Business Law §§ 340, 341). The OAG Complaint alleges that Dr. Kaloyeros colluded with others to manipulate FRMC's procurement process to ensure that the corporation awarded contracts to pre-selected bidders (OAG Complaint, ¶¶ 12-17). Dr. Kaloyeros entered a plea of not guilty to these charges as well.
On October 21, 2016, plaintiff and FSMC allegedly executed an undertaking by which FSMC agreed to advance Dr. Kaloyeros's legal fees and expenses through September 22, 2016 ("FSMC Undertaking"). The undertaking, apparently signed only by Dr. Kayoleros, acknowledged that FSMC's by-laws entitled directors to indemnification "to the full extent permitted by law". In addition, Dr. Kaloyeros "affirmed" his good-faith belief that, with respect to the subject matter of the federal prosecution, he acted in good faith, in a manner he reasonably believed to be in (or not opposed to) the best interests of FSMC, and without reasonable cause to [*3]believe that his conduct was unlawful. Dr. Kayoleros further agreed to repay any advances if it ultimately were determined that he is not entitled to indemnification. On the same date, Dr. Kaloyeros and FRMC allegedly entered into an identical undertaking with respect to the OAG investigation ("FRMC Undertaking").
Complaining that defendants have refused to provide him with any further advancement of legal fees and expenses, plaintiff commenced this action on January 30, 2017. The Complaint alleges three causes of action: (1) a request for a declaratory judgment that plaintiff is entitled to advancement of legal fees and indemnification under Not-for-Profit Corporation Law § 724; (2) a claim of promissory estoppel, founded upon allegations that defendants represented that they would indemnify and advance his legal fees and expenses; and (3) a claim for breach of contract, based upon the corporations' by-laws and representations allegedly made by defendants to plaintiff. Plaintiff also simultaneously moved for a preliminary injunction requiring defendants to advance legal fees and expenses incurred to date and going forward.
ANALYSIS
To obtain a preliminary injunction, the moving party has the burden of demonstrating: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable harm in the absence of the requested injunctive relief; and (3) a balance of the equities tipping in favor of the movant (see CPLR 6301; Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]).
A. Likelihood of Success
1. Statutory Advancement
Pursuant to Not-for-Profit Corporation Law ("NFPCL") § 724 (a), the directors of a not-for-profit corporation formed under the laws of New York State are entitled to indemnification of legal fees and expenses to the extent authorized under NFPCL § 722. Indemnification is permitted under NFPCL § 722 (a) where a person has been "made . . . a party to an action or proceeding . . . , whether civil or criminal, . . . by reason of the fact that he . . . was a director . . . of the corporation . . . , if such director . . . acted, in good faith, for a purpose which he reasonably believed to be in . . . the best interests of the corporation and . . . had no reasonable cause to believe that his conduct was unlawful."
An application to a court for indemnification may be made where the not-for-profit corporation refuses to provide indemnification in accordance with its by-laws (see NFPCL § 724 [a]; Galante v Queens Borough Pub. Lib., 2016 US Dist LEXIS 118251 [EDNY 2016]). The application for indemnification shall be made either "[i]n the civil action or proceeding in which the expenses were incurred" or in a separate proceeding filed in Supreme Court (NFPCL § 724 [a]).
"Where indemnification is sought by judicial action, the court may allow a person such reasonable expenses, including attorneys' fees, during the pendency of the litigation as are necessary in connection with his defense therein, if the court shall find that the defendant has by his pleadings or during the course of the litigation raised genuine issues of fact or law" (NFPCL § 724 [c]). "The purpose of advancement is 'to allow directors [and officers] to defend themselves' by ensuring that they can access funds to pay for legal fees during the pendency of the lawsuit" (Galante, at *5, quoting Levy v Young Adult Inst., Inc., 2015 US Dist LEXIS 122442 [SDNY 2015]). If advancement is ordered, the advanced funds must be repaid if it ultimately is determined that the recipient is not entitled to indemnification (NFPCL § 725 [a]).
In arguing that plaintiff is unable to demonstrate a likelihood of success on his statutory claim for indemnification and advancement, defendants first contend the issues raised in the federal and state criminal prosecutions are unrelated to Dr. Kaloyeros's service as a director of the defendant corporations. According to defendants, the criminal prosecutions arise out of Dr. Kaloyeros's conduct as the President of SUNY Poly, not his role as a director of the affiliated not-for-profit corporations. Thus, defendants maintain that any indemnification must come from the State pursuant to Public Officers Law § 19.
Defendants' opposition to the motion raises legitimate questions as to whether the legal fees and expenses requested by plaintiff arise, at least in part, out of his State service. Both the USAO and OAG Complaints emphasize plaintiff's role as the head of SUNY Poly, and the OAG Complaint goes even further, describing plaintiff as "a government official who also served on the FRMC board as a representative of SUNY Poly" (¶ 12). Press releases put out by SUNY Poly, allegedly approved by Dr. Kaloyeros, also highlight plaintiff's governmental role as the President of SUNY Poly with respect to the development projects at issue herein. In addition, both the USAO and OAG Complaints identify the defendant corporations as the victims of plaintiff's alleged fraud and misconduct.
Nevertheless, plaintiff's contention that there is a nexus between the criminal charges and his corporate role finds some support in the accusatory instruments. For example, the USAO Complaint cites Dr. Kaloyeros's supervision of FSMC's staffing and day-to-day operations, his role in causing FSMC to issue the allegedly rigged RFPs, and his "substantial control" over the corporation's state-funded development projects (¶¶ 27 [b], 68, 77).[FN1]
And, to a somewhat lesser extent, the OAG Complaint relies on Dr. Kaloyeros's position as a director of FRMC, his active role on the corporation's RFP review committee, and his "strong influence over the RFP process" (¶ 11). Accordingly, the Court concludes that plaintiff has raised a genuine issue of fact as to whether the criminal prosecutions arose, at least in part, from the exercise of Dr. Kayoleros's powers as a director of the two defendant corporations (see Schlossberg v Schwartz, 43 Misc 3d 1224 [A] [Sup Ct, Nassau County 2014]).[FN2]

On the other hand, the record contains no basis for the advancement of legal fees and expenses relative to Dr. Kaloyeros's public employment with SUNY Poly. The Complaint does not identify a specific employment matter to which Dr. Kaloyeros has been made a party by reason of his former corporate directorships. Rather, it appears that Dr. Kaloyeros seeks to initiate some type of affirmative litigation regarding his SUNY Poly employment. However, plaintiff "may not require [defendants] to advance the expenses of litigating affirmative claims" [*4](Galante, at *15; see Scholssberg, supra).
Defendants next contend that Dr. Kaloyeros has failed to raise a genuine issue of fact as to whether, with respect to the matters at issue in the criminal cases, he "acted, in good faith, for a purpose which he reasonably believed to be in . . . the best interests of the corporation and . . . had no reasonable cause to believe that his conduct was unlawful" (NFPCL § 722 [a]). The Court agrees. While "[t]he standard by which a genuine issue of fact or law has been raised . . . is 'a far less demanding standard' than that necessary on a motion for summary judgment" (Booth, 137 F Supp 2d at 237-238, quoting Sequa Corp. v Gelmin, 828 F Supp 203, 206 [SDNY 1993]), the plain language of the statute does call for some affirmative showing by the party seeking advancement.
Plaintiff commenced this action through the filing of an unverified Complaint, and his motion for a preliminary injunction is supported only by the affirmation of his counsel. 
Moreover, the unsworn undertakings are not admissible as evidence of the facts asserted therein,[FN3]
and Dr. Kaloyeros's not-guilty pleas to the criminal charges do not speak to whether he acted in good faith for purposes that he reasonably believed to be in the best interests of the defendant corporations. Plaintiff's reliance on the public pronouncements of his counsel is similarly unavailing. Accordingly, on the present record, the Court concludes that plaintiff has failed to raise a genuine issue of fact with respect to his eligibility for statutory indemnification and advancement and, therefore, has failed to demonstrate a likelihood of success on the merits of his statutory cause of action.
2. Promissory Estoppel
In the alternative, plaintiff contends that he has demonstrated a likelihood of success in obtaining advancement of legal fees and expenses on his cause of action sounding in promissory estoppel. To establish a claim for promissory estoppel, plaintiff must show that defendants made "a clear and unambiguous promise upon which [he] reasonably and detrimentally relied" (Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC, 31 AD3d 983, 986 [3d Dept 2006]). Even where these elements have been adequately alleged, "the doctrine of promissory estoppel is limited to cases where the promisee suffered an unconscionable injury" (AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6, 20-21 [2d Dept 2008] [internal quotation marks omitted]; see Zuley v Elizabeth Wende Breast Care, LLC, 126 AD3d 1460, 1460 [4th Dept 2015], amended 129 AD3d 1558 [2015]). 
The Court finds that plaintiff has not demonstrated a likelihood of success on his claim for promissory estoppel. The record is devoid of proof in admissible form evidencing any clear and unambiguous promises made by defendants. As stated above, the Complaint is unsworn, and plaintiff has not submitted an affidavit in support of his motion. Further, neither the Complaint nor the papers submitted in support of the motion identify the person or persons who made the alleged promises, describe whether such person or persons had the authority to make such promises on behalf of the corporations, or otherwise detail the circumstances surrounding the [*5]alleged promises to a sufficient degree to establish the reasonableness of plaintiff's alleged detrimental reliance.[FN4]

B. Irreparable Harm
A motion for a preliminary injunction must be supported by proof of irreparable harm (Nobu Next Door, 4 NY3d at 840, supra). In this context, irreparable harm means any injury for which an eventual monetary award alone cannot be adequate compensation (see Town of Liberty Volunteer Ambulance Corp. v Catskill Regional Med. Ctr., 30 AD3d 739, 730 [3d Dept 2006]). Further, the movant must show that the claimed injury is more than just a mere possibility and, in fact, is imminent and likely to occur absent a preliminary injunction (Golden v Steam Heat, 216 AD2d 440 [2d Dept 1995]).
Plaintiff asserts, through the argument of his counsel, that "[t]he denial of a preliminary injunction directing FSMC and FRMC to advance fees and expenses . . . would prejudice his ability to mount a vigorous defense to multiple felony charges . . . ." However, plaintiff himself makes no sworn representation that he is unable to fund a defense to the criminal charges from his own financial resources.[FN5]
Moreover, there is no basis for concluding that Steptoe intends to withdraw from continued representation of plaintiff or that plaintiff would otherwise be left without criminal defense counsel if advancement is not granted. In fact, the Complaint alleges that plaintiff anticipates receiving reimbursement of at least a portion of Steptoe's legal fees and expenses from defendants' insurer. Accordingly, the Court finds that plaintiff has failed to demonstrate the prospect of imminent and irreparable harm if the requested injunction is not granted.[FN6]

This is not to say, as defendants appear to suggest, that a corporation's failure to provide advancement of defense funds can never constitute irreparable harm sufficient to warrant the issuance of a preliminary injunction. Deprivation of a right to a defense may well constitute irreparable harm, but there simply is no proof that Dr. Kaloyeros's ability to defend against the criminal charges would be prejudiced in any manner — much less irreparably harmed — in the absence of a preliminary injunction ordering defendants to advance his legal fees and expenses.
CONCLUSION
Accordingly,[FN7]
it is
ORDERED that plaintiff's motion for a preliminary injunction is denied in all respects.
This constitutes the Decision and Order of the Court. The original of this Decision and Order is being transmitted to defendants' counsel; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220. Counsel is not relieved from the applicable provisions of that Rule respecting filing, entry and Notice of Entry.
Dated: Albany, New York
March 24, 2017
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
Notice of Motion, dated January 30, 2017;
Affirmation of Michael C. Miller, dated January 30, 2015, with exhibits A-G;
Memorandum of Law In Support, dated January 30, 2017;
Affirmation of James T. Potter, dated March 2, 2017, with Exhibits A-C;
Affidavit of Stephen Ference, sworn to March 2, 2017, with exhibits A-B;
Defendants' Memorandum of Law in Opposition, dated March 2, 2017;
Reply Memorandum of Law, dated March 15, 2017; and
Second Affirmation of Michael C. Miller, dated March 15, 2015.



Footnotes

Footnote 1:As defendants observe, plaintiff did recuse himself from FSMC board votes relating to the development projects. But this does not speak to the capacity in which plaintiff allegedly manipulated the RFP process and concealed pertinent information from the corporation.

Footnote 2:A determination that the accusations made against Dr. Kaloyeros arise both from his corporate and governmental capacities would not act as a complete bar to indemnification or advancement under the NFPCL, but it would require a reasonable apportionment of the requested legal fees and expenses between the various capacities in which plaintiff acted (see generally Booth Oil Site Admin. Group v Safety-Kleen Corp., 137 F Supp 2d 228, 238 [WDNY 2000]).

Footnote 3:This is true even if defendants chose to make advancements on the basis of plaintiff's unsworn "affirmations" or otherwise failed to insist on strict compliance with NFPCL § 722. Moreover, even if defendants initially believed that advancement was authorized and appropriate, they certainly were free to reassess the issue as new facts and allegations came to light.

Footnote 4:Plaintiff cannot meet his burden of demonstrating a likelihood of success on the merits of his promissory estoppel claim by relying upon new proof submitted for the first time in reply. Accordingly, the Court declines to consider the new factual material set forth in the reply affirmation of Michael C. Miller, Esq. In any event, it is clear from the new affirmation that the oral representations allegedly relied upon by plaintiff predate execution of the Undertakings, which, by their terms, were limited to the advancement of legal fees and expenses incurred prior to the commencement of the criminal cases. Under the circumstances, it seems doubtful that plaintiff can succeed in establishing that any reliance on pre-Undertaking oral representations was reasonable with respect to legal fees and expenses incurred after September 22, 2016 (insofar as the retention of experienced defense counsel in response to federal and state felony charges can be considered detrimental reliance). And any claim of advancement with respect to legal fees and expenses incurred prior to September 22, 2016 appears to be covered by the alleged contracts between plaintiff and defendants, which would render recovery in quasi-contract unavailable.

Footnote 5:In this connection, defendants submit proof that plaintiff earned well over one million dollars per year for at least five years prior to his October 2016 resignation as the President of SUNY Poly.

Footnote 6:The Court has considered the issue of the necessity of advancement in the context of irreparable harm, as presented by the parties, but the same issue also bears on the propriety of an award of statutory advancement. Under NFPCL § 724 (c), the Court "may" allow the advancement of such reasonable legal fees and expenses "as are necessary" to plaintiff's defense. Thus, under the plain language of the statute, an award of statutory advancement is a matter of judicial discretion, not an entitlement, and in exercising its broad discretion, a court may consider whether advancement in a particular case would further the statutory objective of ensuring that corporate directors have sufficient funds to defend against suits arising from their service and is not merely being used as a vehicle to shift financial risk from a criminal defendant to the not-for-profit corporations that he is accused of defrauding (cf. Matter of WorldCom, Inc. Sec. Litig., 354 F Supp 2d 455, 469-470 [insurance policy creating contractual entitlement to advancement]). 

Footnote 7:Given plaintiff's inability to demonstrate a likelihood of success on the merits or the prospect of imminent and irreparable harm, the Court need not delve into the relative equities of the case. In addition, it bears noting that if the Court had granted the requested preliminary injunction, plaintiff would be obliged to "give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he . . . was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction" (CPLR 6312).